(No. 28083.—

The People of the State of Illinois, Defendant in Error, *vs.* Barney Franklin, Plaintiff in Error.

*Opinion filed January 17, 1945—Rehearing denied March 15, 1945.*

Felix J. Streyckmans, of Chicago, for plaintiff in error.

George F. Barrett, Attorney General, and Thomas J. Courtney, State's Attorney, of Chicago, (Edward E. Wilson, John T. Gallagher, Melvin S. Rembe, and Joseph A. Pope, all of Chicago, of counsel,) for the People.

Mr. Justice Smith delivered the opinion of the court:

Plaintiff in error was charged by an indictment in the criminal court of Cook county with the murder of Sam Mantone. Upon a trial before the court, a jury having been waived, he was found guilty of manslaughter. He

has brought the record here for review. The only question raised by plaintiff in error in this court is the sufficiency of the evidence to sustain the judgment.

The undisputed facts show that at about one o'clock A. M. on the night of October 8, 1943, plaintiff in error entered a tavern in Cicero known as the Black Cat Inn. He went to the tavern in response to a call from Natalie Jeskewitz. She had called him by telephone requesting that he come to the tavern and get her. The record indicates that plaintiff in error and Natalie had been friends for some time. When he arrived at the tavern, about one o'clock in the morning, he joined Natalie and another girl, Alexandria Walega, and one Charles Krajacic. They remained at the bar drinking until about four o'clock in the morning when the deceased came in. Apparently the deceased was not acquainted with plaintiff in error and some of the other members of the party. He was, however, introduced to, at least, some of them and joined them in drinking. About 4:30 in the morning, plaintiff in error requested Natalie to leave the tavern with him. At that time she was talking to Krajacic and the deceased. In response to the request of plaintiff in error, she replied: "Just a minute; I will be right with you." Plaintiff in error then left the tavern alone. Shortly thereafter the deceased also left the tavern. Prior to that time there had been no words or argument between the deceased and plaintiff in error. Shortly thereafter the deceased returned to the tavern and announced that he had been shot. He had an abdominal gunshot wound from which he thereafter died. While he was outside the tavern, the members of the party at the bar heard a scuffle and a noise like pebbles being thrown against the window.

Just what occurred outside the tavern between the deceased and plaintiff in error is shown only by the testimony of plaintiff in error, and by the fact that deceased received the mortal wound. He testified that when he left the

tavern, he went to his car which was parked outside; that he was sitting in the driver's seat when deceased came out of the tavern; that the deceased came to him and made some remark and struck him several blows on the head and the back of the neck; that in order to avoid the blows from the deceased, plaintiff in error moved over to the righthand side of the driver's seat; that he then got the pistol which was in a pocket on the inside of the righthand door of the car; that the deceased then came around on the right side of the car and renewed the attack on plaintiff in error. He further testified that he struck the deceased in the face with the gun. He denied all knowledge as to whether the gun was discharged or how it was discharged; he claimed he only used it to strike the deceased in the face in order to ward off his blows. After the shot was fired the deceased went into the tavern. Plaintiff in error then went in and got Natalie and they drove to the home of his brother. He then telephoned the tavern for the purpose of ascertaining the extent of the injuries inflicted upon the deceased. While he was talking to various members of the party in the tavern by telephone, the police traced the call and appeared at the home of his brother and placed him under arrest. At that time he showed no evidence and made no claim that he had been assaulted by the deceased. Natalie also testified that he made no claim to her at any time that he had been assaulted by the deceased.

The fact is undisputed in the record that the deceased lost his life from a shot fired from a gun in the hands of plaintiff in error. That being true, the burden was on him to prove circumstances mitigating, justifying or excusing his act, unless it was sufficiently manifest from the proof on the part of the prosecution that he was justified or excused in committing the homicide. And it was the province of the trial court, a jury having been waived, to

determine whether the circumstances proved were sufficient. *People* v. *Hubert,* 251 Ill. 514.

No errors are assigned other than the alleged insufficiency of the evidence. The trial judge saw and heard the witnesses testify. He had the opportunity to observe their conduct and demeanor while testifying and was in a better position to weigh the testimony than is this court. The law has committed to the jury, or to the trial court where a cause is tried by the court, the determination of the credibility of the witnesses and the weight to be accorded to their testimony. Where the evidence is merely conflicting, this court will not substitute its judgment for that of the jury or the trial court. *People* v. *Bolger,* 359 Ill. 58; *People* v. *Mangano,* 356 Ill. 178; *People* v. *Fortino,* 356 Ill. 415; *People* v. *Arbuthnot,* 355 Ill. 577; *People* v. *McPheron,* 354 Ill. 381; *People* v. *Herbert,* 340 Ill. 320; *People* v. *Yates,* 339 Ill. 421; *People* v. *Martin,* 304 Ill. 494.

It being undisputed on this record that the deceased was killed by a shot from a gun in the hands of plaintiff in error, the burden was upon him to prove circumstances mitigating, justifying or excusing his acts, unless it was sufficiently manifest from the proof on the part of the prosecution that he was justified or excused in committing the homicide. The trial court was of the opinion that the circumstances appearing from the testimony of plaintiff in error were not sufficient to justify or excuse the killing, but were sufficient to reduce the crime to manslaughter. The trial court saw and heard the witness testify and was in a position to judge the weight of his testimony. In such circumstances the finding of the trial court will not be disturbed.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*