(No. 36192.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LESLIE GREEN, Plaintiff in Error.

*Opinion filed January 23, 1962.*

FLORENCE R. GRAHAM, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and JOHN T. GALLAGHER and LEO F. POCH, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

Defendant, Leslie Green, was indicted in the criminal court of Cook County for murder of James Nelson. He pleaded not guilty, waived his right of jury trial, was found guilty of involuntary manslaughter, and sentenced to the penitentiary for a term of 5 to 10 years. He prosecutes this writ of error from that judgment.

The undisputed evidence reveals that on July 5, 1959, the defendant, his wife Mary Green, his mother-in-law Emma Clark, and James Nelson, who was living in a common-law marriage relationship with Emma Clark, lived together in an apartment in Chicago Heights. Emma Clark and James Nelson, returning from a trip to Kankakee, found the defendant and his wife at home. Nelson asked the Greens if they had a good Fourth of July vacation and Mary Green replied that she had not because her husband had beaten her. Thereupon a conversation ensued between the defendant and Nelson in which Nelson expressed disapproval of the defendant beating his wife. Nelson and Emma Clark soon thereafter left, went to her sister's home on 26th Street, and returned to the apartment about 11:30 P.M. About 12:10 A.M. that same night the police received a call reporting a shooting at the apartment. When they arrived they found Emma Clark and a neighbor trying to lift Nelson, who had blood on his chest, into a car. Nelson died shortly thereafter. Emma Clark informed the police that the defendant had shot James Nelson.

The rest of the testimony is in dispute. Emma Clark, testifying for the State, stated that when she and James Nelson went to her sister's home on 26th Street, the defendant followed them with a gun. She saw him walk into her sister's yard and then leave the yard to get into a car. They returned to the apartment house about 11:30 and she proceeded to their apartment, but Nelson stayed out in front. Mary Green was not home at that time. Soon Mary Green returned and entered the Greens' bedroom. At that time defendant Leslie Green grabbed Mary, and Emma Clark heard a conversation between them. Mary then ran out the front door. A few minutes later, from her bedroom, Emma Clark looked out the door and saw the defendant walking with a rifle in his hand. When James Nelson entered the front door, the defendant raised the rifle and fired one shot. When he fired, Nelson ran to him and grabbed the rifle.

Defendant and Nelson started wrestling and Nelson took the rifle out of defendant's hand and the gun broke in two. While they were continuing to wrestle, James hit the defendant over the head and shoulders with the barrel of the gun. James then told Emma that the defendant had shot him and they quit wrestling as James slid to the floor. Emma Clark further testified that the defendant was 15 feet from Nelson when defendant fired.

Cross-examination revealed that Emma Clark previously testified at the coroner's inquest that when James Nelson came in the door, she asked him where he had been and upon receiving an answer, she turned back to her bedroom and soon thereafter heard a little "ping." She then went back into the room and called the police. On further cross-examination Emma Clark still insisted that she was looking at the defendant when he raised the rifle.

Albert Pascarella, a police officer, testified to the dying declaration of James Nelson in which he stated that the defendant shot him. On cross-examination he also testified that he took a statement from Emma Clark at the police station in which she said that she heard a gun go off but she did not see defendant point the rifle at Nelson and shoot him.

Albert Sauter, a police officer, testifying for the State, said that when he had a conversation with the defendant, and in response to Sauter's inquiry as to what had happened, the defendant stated that James Nelson had come into his bedroom, taken the gun from the corner and started beating him with it, that they struggled in the bedroom and into the front room, and the shot was fired while they were wrestling for the gun. Sauter further testified that Emma Clark stated she heard a shot fired when she was at her bedroom door.

The defendant, testifying in his own behalf, stated that Nelson entered the defendant's bedroom and went for the gun, which was located between the television and the door. The defendant grabbed him so that they went into the hall-

way where Nelson hit him with the gun, and they started tussling for it. Defendant further testified that he did not know when Nelson was shot, but he heard Nelson say "I am shot" and they quit scuffling. Defendant denied that he had ever pulled the trigger or shot Nelson.

It is defendant's contention that the verdict of involuntary manslaughter is against the manifest weight of the evidence in that there was no evidence whatsoever of manslaughter presented at the trial; that the defendant did not receive the speedy trial to which he was entitled by statute and by the constitution; that he did not waive such right; that the verdict of the trial court should be set aside and the defendant released; and that to order a new trial on a charge of murder would constitute double jeopardy. The State contends that where the evidence would justify the court in finding the defendant guilty of murder, the defendant cannot complain that he has been found guilty of a lesser offense, manslaughter, and that the defendant was tried within the provision of the four-months statute.

In the insistence that a verdict of manslaughter is against the manifest weight of the evidence, defendant relies primarily on *People* v. *Newman,* 360 Ill. 226, where we reversed a conviction of manslaughter on the ground that there was no evidence in the record upon which such a verdict could be based. We found that the evidence indicated only two possible conclusions: either the defendant acted in self-defense or was guilty of deliberate murder. We have also held that an instruction defining manslaughter should not be given when the evidence admits only the conclusion that the crime was murder. (*People* v. *Pokosa,* 342 Ill. 404.) If, however, there is evidence in the record which, if believed, would reduce the crime to manslaughter, such a verdict is justified. *People* v. *Jones,* 384 Ill. 407.

In *People* v. *Sain,* 384 Ill. 394, it was urged that defendant was either guilty of murder or nothing at all, and, consequently, that a finding of manslaughter could not stand.

We there stated, at p. 399: "It was the province of the trial judge, a jury having been waived, to settle the conflict in the evidence and determine from the facts and circumstances whether defendant acted in self-defense, or, if not in self-defense, whether the circumstances attending the assault were such that her death at defendant's hands constituted murder, manslaughter or justifiable homicide."

Similarly, in *People* v. *Franklin,* 390 Ill. 108, we held, at page 111: "It being undisputed on this record that the deceased was killed by a shot from a gun in the hands of plaintiff in error, the burden was upon him to prove circumstances mitigating, justifying or excusing his acts, unless it was sufficiently manifest from the proof on the part of the prosecution that he was justified or excused in committing the homicide. The trial court was of the opinion that the circumstances appearing from the testimony of plaintiff in error were not sufficient to justify or excuse the killing, but were sufficient to reduce the crime to manslaughter. The trial court saw and heard the witness testify and was in a position to judge the weight of his testimony. In such circumstances the finding of the trial court will not be disturbed."

The precise question in the case at bar is whether the evidence justified a conclusion that the deceased lost his life from a shot fired by defendant, and whether the circumstances appearing from the testimony were not sufficient to excuse the killing, but were sufficient to reduce the crime to manslaughter. *People* v. *Wiggins,* 12 Ill.2d 418; *People* v. *Franklin,* 390 Ill. 108.

In the instant case, counsel for the defendant in the trial court, in presenting his final arguments to the court, stated, in attempting to evade a finding of "murder," that he thought the trial judge could safely find "manslaughter." We, of course, now have counsel on appeal arguing to the contrary. The court, in pronouncing sentence, indicated that from the evidence he thought the intention was to hurt

rather than to kill and that, therefore, an involuntary manslaughter verdict was justified. At that time the court also stated that he was extending himself not to enter a verdict of murder.

We think it clear that there was sufficient evidence in the record from which the trial court could have determined that the defendant fired the shot that killed the deceased under circumstances insufficient to justify or excuse the act. Under all the facts and circumstances, the trial judge could have found that the requisite malice for a conviction of murder was lacking.

Considering the entire record and the testimony of the witnesses, herein referred to, we cannot say that the trial judge erred in finding the defendant guilty of involuntary manslaughter. Under the circumstances here present, the finding of the trial judge will not be disturbed. The record contained evidence upon which a manslaughter verdict could be returned and the fact that the evidence would have justified the court in finding the defendant guilty of murder is not a matter of which he can complain. *People* v. *Wiggins,* 12 Ill.2d 418; *People* v. *Sain,* 384 Ill. 394; *People* v. *Treger,* 320 Ill. 329.

As to the contention that the defendant was not tried within the provisions of the four-months statute (Ill. Rev. Stat. 1959, chap. 38, par. 748,) and was not granted a speedy public trial in accordance with his constitutional privilege (Ill. Const. art. II, sec. 9,) the record does not disclose that this point was raised in the trial court. In any event, on July 27, 1959, defense counsel was asked by the court if he would be ready for trial prior to the fall term and was informed by the defense counsel that he would rather wait for trial at the fall term and have the setting made accordingly. Thereupon, by mutual consent of the State's Attorney and defense counsel, the cause was continued to September 9, 1959. Defendant thereby waived his right to be tried within four months from July 6, 1959, the

date of his arrest and committment. His trial began on December 14, 1959. It was well within the four-months period which recommenced on September 9, 1959. *People v. Rankins,* 18 Ill.2d 260.

In the view we have taken of this case, it is unnecessary to pass upon the contention of the defendant that if the verdict of the trial court was set aside the defendant should be released, since remanding the cause for a new trial on a charge of murder would constitute double jeopardy. The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*