(No. 37426.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MILTON WASHINGTON, Plaintiff in Error.

*Opinion filed February 1, 1963.*

LEONARD KARLIN, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and EDWARD J. HLADIS and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Defendant, Milton Washington, who waived a jury, was tried by the criminal court of Cook County and found guilty of the murder of Melvin Partee. A sentence of life imprisonment was imposed and defendant now prosecutes this writ of error for review, contending that he was acting in self-defense or that, at most, the killing was only voluntary manslaughter provoked by the deceased.

The homicide occurred on the evening of April 15, 1961, in a dry-cleaning shop operated by defendant at 1509 N. Clybourn Street in Chicago. Eyewitnesses to the occurrence were Eloise Randall, a shop employee, and Elbert and Arthur House, first cousins of the deceased. The defendant, it appears, had but recently taken over the operation of the shop from the deceased who, in turn, had been leasing the business from one of the House brothers. And while it is not precisely spelled out, it is apparent the decedent considered that defendant still owed him some money on the transaction.

According to Eloise Randall, decedent came to the shop about 4:00 P.M. to collect the money owed him by defendant, but was told by the latter to return at 7:00 P.M. When the deceased arrived on the second occasion, defendant was in the rear of the store eating with the House brothers and, according to the witness, the decedent made several telephone calls and remained in the front of the store until summoned to the rear by one of the House brothers. She couldn't hear what was said there but it was the testimony of Elbert House that there had been a few moments of conversation during which defendant ordered decedent to stay in the front of the store, and the latter replied: "Pay me my money and I won't come back at all." About this time defendant went to the front of the store to answer a telephone call and it is agreed that the decedent and the House brothers followed him there.

Detailing the events which ensued, Eloise Randall testified that while defendant was talking on the phone, decedent said to him: "Have me some money by tomorrow or I'll padlock you.", and turned toward the door. She said that a customer came in just at that time, that defendant hung up the phone, walked to the back of the store, returned with a rifle and shot the deceased as he was leaving the store. Elbert House did not hear the decedent's

remark about padlocking the store, but testified that when defendant completed his telephone conversation, he rushed to the back of the store and returned with a rifle shouting: "I told you I'm going to kill you." House said that he attempted to jump between the men but defendant fired one shot and the decedent fell to the floor. It was stipulated that the cause of death was a bullet wound in the brain but, incredibly, there is not one iota of proof in the record as to whether the bullet entered the front, side or rear of the head.

Defendant, testifying in his own behalf, admitted that he had fired the fatal shot, but asserted that it was done in self-defense when the deceased turned around at the door and "came after" him with his hand in his jacket pocket. In addition, defendant stated that decedent had struck him in the chest and had threatened to kill him minutes before when they were at the back of the store with the House brothers. He stated, too, that decedent had visited the store on prior recent occasions and uttered threats, that he had been beaten by deceased on one such occasion, and that the latter had once discharged a gun into the shop floor. Lulu Grant, who had worked in the shop for defendant, verified the latter acts of violence attributed to the deceased, while Albert Manuel, a customer, testified he had once heard decedent threaten to kill the defendant if the money was not paid. On rebuttal, a police officer testifid that no trace of a bullet could be found in the floor.

Police officers summoned to the shop after the shooting stated that the body had to be moved so they could open the door and that they had found no weapons in the decedent's clothing. Defendant admitted that he had fired the fatal shot but, in an exculpatory statement given the officers, stated that he had experienced trouble with decedent before, that he had told decedent not to come in the store and that he had shot as the decedent "charged" at him.

Since, in this case, it is undisputed that the deceased was killed by a shot from a gun in the hands of defendant, the burden was on the latter to prove circumstances justifying, mitigating or excusing his act, unless it was sufficiently manifest from the proof of the People that he was justified or excused in committing the homicide. (*People* v. *Franklin,* 390 Ill. 108.) And it was the province of the trial court, sitting as the trier of fact, to settle conflicts in evidence and to determine from the facts and circumstances whether defendant acted in self-defense, or, if not, whether the circumstances attending the assault were such that the death at defendant's hands constituted murder, manslaughter or justifiable homicide. (*People* v. *Green,* 23 Ill.2d 584; *People* v. *Sain,* 384 Ill. 394.) In the record before us, we see no basis to disturb the determination of the trial court that the killing was deliberate murder, rather than self-defense or voluntary manslaughter.

There is little to support defendant's claim of self-defense and much which militates against it. Apart from the testimony of the eyewitnesses that decedent had manifested no threats or violence against defendant prior to the shooting, the absence of weapons in decedent's possession and the presence of the body in front of the door give credence to the testimony of the witnesses that the deceased was not "charging" or "coming after" defendant when the shot was fired, but was in fact starting to go out the door.

Nor are we justified in construing the killing as voluntary manslaughter. As defined by our Criminal Code, manslaughter is the killing of a human being without malice, express or implied, (Ill. Rev. Stat. 1959, chap. 38, par. 361,) and, with regard to voluntary manslaughter it is provided that "there must be a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal

injury on the person killing. The killing must be the result of that sudden, violent impulse of passion supposed to be irresistible; for if there should appear to have been an interval between the assault or provocation given, and the killing, sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge, and punished as murder." (Ill. Rev. Stat. 1959, chap. 38, par. 362; see: *People* v. *Smith,* 404 Ill. 350.) No words, or gestures, however provoking or insulting, can amount to considerable provocation which will so mitigate intentional killing as to reduce the crime to manslaughter, (*People* v. *Sally,* 17 Ill.2d 578; *People* v. *Russell,* 322 Ill. 295,) and what constitutes a sufficient "cooling-off period," so as to cause the killing to be murder, is dependent upon the facts and circumstances in each particular case. *People* v. *Harris,* 8 Ill.2d 431.

Here, if the prosecution's witnesses are to be believed, the decedent, immediately prior to the killing, inflicted no injury upon the defendant and was guilty of no conduct or attempt to inflict injury which could be deemed sufficient to excite a sudden, violent and irresistible passion in a reasonable person. Such being the case, the trial court was justified in determining there had been a deliberate murder. Moreover, even if it be accepted as true that the decedent had assaulted and threatened defendant on prior occasions, and had in fact struck defendant in the chest while they were in the rear of the store some minutes before the shooting, we cannot say that the killing was reduced to manslaughter. As to the alleged prior assault and threats it is clear that a sufficient interval of time had elapsed before the killing for the voice of reason to have returned to defendant, and the same is true in the events that allegedly occurred at the time of the homicide. By defendant's own admission he walked to the front of the shop and carried on a telephone conversation after being struck by the deceased and we think the interval was suf-

ficient for any sudden and violent passion to have passed. This is particularly true when we consider the nature of the assault decedent was supposed to have made on defendant. Again by defendant's testimony, the deceased did no more than to strike him with his fists. He was not injured and, under the circumstances of this case, we cannot say either that a highly provoking injury was inflicted upon defendant or that an attempt had been made by the deceased to commit a serious personal injury on the defendant. In any event, when the minor nature of the attack is laid beside the time which elapsed before the actual shooting, we are of the opinion the trial court properly concluded there had been an ample period for defendant to reflect upon the matter and for the voice of reason to return.

Because the House brothers were the decedent's cousins, and Eloise Randall purportedly his "sweetheart," it is suggested that their testimony giving the basis for a deliberate killing is unworthy of belief. But where, as here, a case is tried without a jury, it is the function of the trial court to determine the credibility of the witnesses and to evaluate conflicting evidence, and a conviction based thereon will be reversed on review only where the evidence is so unreasonable, improbable or unsatisfactory as to leave a reasonable doubt of the defendant's guilt. (*People* v. *Harris,* 8 Ill.2d 431; *People* v. *Brown,* 392 Ill. 519.) The evidence in this record is not of such character, nor does any other basis appear to justify our interference with the findings of the trial court.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*