**People of the State of Illinois, Defendant in Error, v. Albert Morrison, Junior, Plaintiff in Error.**

Gen. No. 49,752.

First District, First Division.
September 14, 1964.

Monte B. Viner, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney, of Chicago, Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, Elmer C. Kissane and William J. Nellis, Assistant State's Attorneys, of counsel), for defendant in error.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

Defendant, Albert Morrison, in a bench trial, was found guilty of the murder of Ida Brown, and was sentenced to the penitentiary for a term of sixteen years. He prosecutes this writ of error, contending that the homicide was accidental, and that the People failed to prove malice aforethought beyond a reasonable doubt.

The homicide occurred on the morning of April 28, 1960, in the presence of three witnesses, Ella Louise Brown, a sister of the deceased, Patricia Brown, a 13-year-old daughter of the deceased and the defendant, and Kathy Cooley, a 14-year-old friend of Patricia.

The defendant resided with the deceased and their daughter Patricia in a rear basement 2-room apartment at 3767 Ellis Avenue in Chicago. Ida's sister "Louise" and her 2-year-old daughter had spent the previous night in the apartment. At about 10:30 a. m., after some drinking participated in by the defendant Morrison, Ida and Louise, the defendant ordered Ida to leave the apartment. Ida started to pack her clothing and directed Patricia to do likewise. After some argument in the bedroom about Patricia leaving with her mother, defendant secured a gun from a dresser drawer, and in the presence of the three witnesses, Ella Louise Brown, Patricia Brown and Kathy Cooley, defendant pointed the gun at Ida and told her he would shoot her. She was sitting on the bed about four feet away. She replied, "I am not scared of you or that gun," and he shot her in the shoulder. As soon as she was shot, he fell over her and commenced crying, and said, "I'm sorry, I didn't mean to shoot you," and gave her first aid. She died that day, April 28, 1960, as a result of the wound.

Defendant testified that on the morning of April 28, 1960, he, Ida and Louise had been drinking and "I had went into the kitchen to get another drink and I seen some rats. We had been having trouble with rats and I took—I went and got the gun in an attempt—if I seen them again, I was going to shoot one. We had did that before." He stated that he and Ida had had "a little small argument but after that, it was all over. We laughed about it and talked and forgot about it. . . . After that, well, she was sitting holding Louise Brown's baby and I was standing by the bed on this side of the bed and she was sitting down. So I had the gun, fooling around with it and she told me to put the gun up before you fool around and hurt somebody with it. When I went by her with the gun, the gun went off. So she said or asked me rather, 'You done shoot me.' And I said, 'I don't believe that.'

11

I asked her, 'Where?' So I started searching her clothes and after I searched her clothes, I seen she was shot up on the shoulder so then I went—I told my daughter and Kathy Cooley to go and tell Henry Hemphill to come and help me to take her to the hospital . . . ."

He denied that Louise, Patricia or Kathy were in the room at the time of the occurrence and asserted he had placed the gun in his "pants belt" some time before the shooting. He further denied making any threats to shoot Ida. He admitted ordering her to leave and that she had called Patricia from the kitchen so that they both could pack their clothing preparatory to leaving, and that when he had said that Patricia could not go with her, Ida refused to go and placed her clothing back in the bureau.

Henry Hemphill, another witness for the People, testified he resided in the basement front apartment and heard a shot about 10:30 a. m. He went back and "saw Kathy, Louise, and Patricia were running out hollering he had shot Frieda [Ida]." He saw the gun on the bed, picked it up and wrapped it in newspaper. The defendant asked for the gun, and when Hemphill refused to give it to him, defendant struck him and they had a fight. He did not recall testifying at the coroner's inquest that defendant had told him it was an accident.

██ In summary, defendant admits the deceased was killed by a shot from a gun held by him and claims it was an accident. Therefore, "unless sufficiently manifest from the proof of the People, the burden of proving circumstances justifying, mitigating or excusing a homicide devolves upon the accused in cases such as this where he admits firing the fatal shot, . . . and it is the province of the trier of fact, whether it be court or jury, to determine whether

12

such justification or excuse in fact existed." People v. Slaughter, 29 Ill2d 384, 391, 194 NE2d 193 (1963).

▮ Here, three eyewitnesses for the People testified as to the defendant pointing the gun at the deceased, threatening to shoot her, and then fired at a range of four feet. Her reply to his threats that she was not afraid of either him or his gun could not be held sufficient provocation to mitigate this intentional killing so as to reduce the crime to manslaughter.

The trial court, after reviewing the evidence and noting the testimony and ages of the two little girls, stressed his belief in their testimony and his disbelief of defendant's testimony as to the events leading up to the shooting, and concluded, "There is no accident here. . . . I will say that it isn't manslaughter. . . . This is murder."

▮ It was the province of the trial court, sitting as the trier of fact, to settle conflicts in evidence and also to determine whether the facts and circumstances attending the assault were such that the death of Ida at defendant's hands was an accident or murder. (People v. Washington, 27 Ill2d 104, 108, 109, 187 NE 2d 739 (1963)). The record here shows no basis to justify our interference with the finding of the trial court that the killing was done with malice aforethought and, therefore, was murder.

For the reasons stated, the judgment is affirmed.

Affirmed.

BURMAN and KLUCZYNSKI, JJ., concur.