**People of the State of Illinois, Plaintiff and Defendant in Error, v. Floyd L. Connie, Defendant and Plaintiff in Error.**

**Gen. No. 49,518.**

First District, First Division.

October 5, 1964.

Oliver A. Brown, Jr., of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney, of Chicago (Elmer C. Kissane and Paul A. O'Malley, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Defendant, Floyd L. Connie, in a bench trial, was found guilty of the unlawful possession of a narcotic drug and sentenced to the penitentiary for a term of not less than two nor more than five years. On appeal he urges reversal of the conviction because the evidence did not establish beyond a reasonable doubt that he knowingly possessed, and had under his control, narcotic drugs.

The objective facts are not controverted. They disclose that shortly before midnight on October 1, 1962 one Dorothy Taylor talked to vice officers John Duffy and James Donovan of the Chicago Police Department and was taken to the 11th Street District police station where she consented to participate in a controlled narcotics buy. Two police matrons searched her and found her to be free of narcotics. She was then furnished with $25 in previously recorded or marked money and allowed to keep a $10 bill of her own. She entered a police car with the officers and was driven to a restaurant located at the corner of

223

■■■■■■■■

Harrison and Pulaski. She entered the restaurant and remained out of view of the officers for about three minutes. She then returned to the police car, but was not searched or questioned as to her activities while in the restaurant. After being driven to the corner of Gladys and Pulaski she left the police car at about 1:00 a. m. on October 2, 1962 and walked to the corner of Pulaski and Jackson. She stood there under police surveillance for about ten minutes and was then seen entering a car driven by defendant. The police followed this car for a short period of time and when it stopped at the corner of Adams and Pulaski, Dorothy Taylor got out and ran away. She has not been seen or heard of since. The police gave chase to defendant's car and stopped it some four blocks later. He was arrested and at the time was holding in his hand the $25 of marked money. One of the officers said he found a tinfoil packet containing heroin on the front seat of the car at about 8 to 12 inches to the right of the driver's seat which Dorothy Taylor had previously occupied.

Although defendant admitted possession of the $25, he denied knowledge or control of the tinfoil packet. He testified that at that time he was living with his wife and eight children. On the morning of October 2, 1962, while driving his mother's car to an all-night store to get milk for his youngest child, he saw Dorothy Taylor on the corner of Jackson and Pulaski. He had known her practically all his life and stopped at her signal and she got in the car. She had been his girl friend and had lived with him for almost a year before he was sentenced to the penitentiary. After he was released he returned to his wife and "kids." He testified Dorothy Taylor wanted him to go back with her but he refused because "my wife and me were getting along pretty good." After some further con-

versation while driving her around the block, she stated she wanted to get out of the car where he had picked her up. He said she gave him something or that she did not exactly give it to him, she "throwed" it on the seat. She threw the money on the seat and jumped out of the car and ran. The first time he saw the tinfoil packet which the police officer said he recovered from the car was at the police station where the officer showed it to him. He denied it belonged to him.

Defendant also testified that Dorothy Taylor had given him money on other occasions, before he was in the penitentiary, while he was there and after he came out. "She was begging me to come back and be with her. From time to time she gave me money trying to induce me to be with her again. This girl stands on the corner at late hours. I have seen her on the corner before. She is a prostitute." He stated that both had the drug habit but he had stopped it. On cross-examination he stated that he had been sentenced for a three-year term by Federal authorities in 1958 for conspiracy to sell narcotic drugs.

Defendant further explained that after Dorothy Taylor ran from his car he tried to find her because he wanted to get an understanding about what happened. It was a strange occurrence. She threw the money and just jumped out and ran. He admitted picking up the money and starting west on Adams after her and as he did so he noticed that an automobile with "no lights" was following. He increased his speed and when he did so the lights were turned on the other car following him. After noticing that this car had a spotlight on it he pulled his car to the curb and was arrested.

Defendant argues that "a fair examination of the evidence discloses that the People failed to prove that

the defendant knowingly possessed or had under his control any narcotic drugs. . . . It is quite reasonable to conclude from the evidence that the woman purchased the narcotics when she went into the restaurant and that she threw the package on the seat at the time she also threw the money and fled from the automobile."

The People counter by charging that defendant's suggested explanation of the source of the narcotics is improbable, and that the issue to be resolved is simply one of credibility, and that in a nonjury case it is the function of the trial court to determine the credibility of the witnesses, the weight to be accorded their testimony, and to evaluate conflicting evidence, and "a conviction based thereon will be reversed on review only when the evidence is so unreasonable, improbable or unsatisfactory as to leave a reasonable doubt of defendant's guilt." People v. Washington, 27 Ill2d 104, 110, 187 NE2d 739 (1963).

The Supreme Court of Illinois has often pronounced that to support a conviction of the crime of unlawful possession of narcotics the People must establish knowledge on the part of defendant of the presence of narcotics and must also establish that the narcotics were in the immediate and exclusive control of defendant. People v. Embry, 20 Ill2d 331, 169 NE2d 767 (1960); People v. Mack, 12 Ill2d 151, 145 NE2d 609 (1957); People v. Nettles, 23 Ill2d 306, 178 NE2d 361 (1961); People v. Galloway, 28 Ill2d 355, 192 NE2d 370 (1963). Realizing the difficulties attendant in sustaining the burden of proof required in possession of narcotics cases, our Supreme Court has adopted the view that actual physical possession is not required to be proved, it being sufficient if constructive possession is established, and further, because the element of knowledge is seldom suscepti-

ble of direct proof, the courts have held that knowledge may be proved by evidence of acts, declarations or conduct of the accused from which it may be fairly inferred that he knew of the existence of the narcotics at the place where they were found.

■ This rigid and somewhat mechanical test by which the sufficiency of the evidence against an accused is evaluated has no doubt been spawned by the known evils of narcotics traffic and by the teachings of human experience, that narcotics are rarely, if ever, found unaccountably in a person's living quarters. The law, therefore, is that where narcotics are found on the premises under the control of defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him, which may be sufficient to sustain a conviction for unlawful possession of narcotics, *absent other facts and circumstances which might leave in the mind of . . . the court, where a jury has been waived, a reasonable doubt as to his guilt.* (Emphasis ours.) People v. Nettles, 23 Ill2d 306, 309, 178 NE2d 361.

■ Although in the instant case an automobile, and not living quarters, is involved, that fact alone does not pursuade us that the rules announced above are inapplicable. However, after a careful review of this record we find the evidence adduced by the People insufficient to sustain the conviction, for this, as the language of the Nettles case implies, is the kind of situation involving "other facts and circumstances" which leave grave and substantial doubt of the guilt of defendant. While the requirement that defendant's guilt be established beyond a reasonable doubt does not mean that the court may disregard the inferences flowing from the evidence before us. (People v. Pigrenet, 26 Ill2d 224, 186 NE2d 306 (1962)), yet it is the duty of this court to resolve all facts and

circumstances in evidence on the theory of innocence rather than guilt if that reasonably can be done. People v. Dougard, 16 Ill2d 603, 158 NE2d 596 (1959); People v. Flores, 29 Ill App2d 151, 172 NE2d 640 (1961).

■ ■ The inference of guilty knowledge cannot be imputed to defendant upon the theory of "constructive possession" where the activities of a State employee, Dorothy Taylor, during crucial moments are unexplained. We need not conjecture as to the probabilities of her having placed the narcotics in defendant's automobile. The facts disclose that she was permitted to keep on her person a $10 bill that belonged to her when she entered the restaurant. The officers were unable to observe what she did during the time she was there. When she returned to the police vehicle she was not again searched to see whether she had any narcotics or the $10 bill on her person at that time. It is sufficient to say that she had the opportunity of and, perhaps, the motive for placing the narcotics in defendant's car. That being so, then under the circumstances of the instant case, it was incumbent upon the People to produce her at trial or to present testimony regarding her conduct before, during and after her meeting with the defendant. The failure to do so, though without fault on its part, leaves the People's evidence inadequate and its case incomplete. Mere presence of the defendant at the scene of the crime is insufficient to establish guilt. People v. Boyd, 17 Ill2d 321, 161 NE 2d 311 (1959). The burden remained on the People to show that no one other than defendant was responsible for the presence of the narcotics. Furthermore, it is unnecessary for defendant to prove or allege that another is guilty. Since defendant's guilt was predicated on conjecture, speculation and sur-

mise it cannot be sustained. We believe that there are present here such facts and circumstances to leave a reasonable doubt as to his knowingly possessing and being in control of the narcotics.

Judgment reversed.

BURMAN, J., concurs.

MURPHY, P. J., dissenting:
I believe this conviction should be affirmed. The evidence here does not warrant reversal of the conviction; it is not "so unreasonable, improbable or unsatisfactory as to leave a reasonable doubt of defendant's guilt." People v. Washington, 27 Ill2d 104, 110, 187 NE2d 739 (1963).