THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MARCELLA WINTERS, Defendant-Appellant.

First District (4th Division)    No. 76-1295

Opinion filed January 5, 1978.

Lawrence Wolf Levin, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joan S. Cherry, and Suzanne Philbrick, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

Defendant, Marcella Winters, was indicted for murder. After a bench trial, she was found guilty of the lesser included offense of voluntary manslaughter (Ill. Rev. Stat. 1973, ch. 38, par. 9—2) and sentenced to 5 years probation. On appeal, defendant contends that there is no evidence to support a conviction for voluntary manslaughter because the record shows that she was either guilty of murder or the homicide was accidental.

On January 9, 1975, at 9:30 p.m., defendant, Marcella Winters, fatally shot her husband in the back. Rosemary Sumrell, who lived next door to

the victim's parents, testified that she saw the victim park his car on the south side of the street. Immediately thereafter, the defendant parked her car on the north side of the street. Defendant waited on the curb for her husband to join her and together they proceeded to walk on the north side of the street toward his parents' home. As they were passing her building, the victim walked slightly ahead of defendant. The neighbor then heard a shot, saw a gun in defendant's hand, heard the victim scream, and saw him fall. The witness said that she saw no unusual gesture indicating an argument between them prior to the shooting.

The victim's father testified that he heard the shot outside his home, and that when he went to the front door, he saw his son lying on the front steps and the defendant standing over him with the gun in her hand, telling him to get up. He further testified that he saw defendant again that evening at the hospital. He asked her why she shot his son and defendant replied, "It is none of your damn business why I shot him."

The officer who arrested defendant testified that when he arrived at the scene of the incident, defendant was on the stairs, cradling her husband in her arms. She told him that she had just shot her husband and gave him the gun. A firearm technician testified that the gun was in good operating condition and that if the gun was already cocked, it required 4 pounds of pressure to discharge it, but if it was not cocked, then 10 pounds of pressure was needed. Moreover, he added that the only way that gun would have discharged was by the pulling of the trigger. Officer Cornelison testified that defendant told him she had received a telephone call from her husband saying that he was at his mother's house and would not be home. She then got in her car to drive to a store, and while driving she saw her husband's car parked in front of a building on Springfield Street, 2 miles away from his parents' home. She parked behind his car, and after a few minutes saw her husband without a coat on talking to a man in the hallway. She approached him, telling him to get his jacket and come with her. He was hesitant, but she persisted. She accompanied him to a second-floor apartment. Inside she saw a closed bedroom door and an elderly man who appeared to be drunk. Her husband then told her to wait downstairs, which she did. When he came down, he stated he was going to his mother's house and defendant followed him. After parking their cars near his parents' home, and while walking together, she told the officer, "I guess I pulled the gun from my purse and shot him in the back." The officer added that when he informed defendant that her husband had died, she became emotionally distraught.

Defendant testified in her own behalf and related substantially the same facts as did Officer Cornelison. However, she added that while in the Springfield Street apartment, the elderly man was attempting to negotiate a purchase of the gun from her husband, but did not have the money to

do so. Her husband then gave the gun to her and told her to put it in her purse. She also added that while they were walking to his parents' house together, her husband asked her for the gun and she took it from her purse to give to him. She testified further that she had had no argument with her husband, that she loved him and that she did not intend to shoot him. She also denied making any statement to her father-in-law as to why she shot her husband.

■■ Defendant argues that the shooting was accidental. The burden was on defendant to prove that the circumstances justified, mitigated or excused her act of killing her husband. (*People v. Washington* (1963), 27 Ill. 2d 104, 187 N.E.2d 739.) No such proof was made. Her testimony that her husband handed her the gun to put in her purse, and that he requested her to give it back to him while on the street was first told at trial. She could not explain how he was shot in the back if she was handing him the gun in the manner she stated. The evidence showed that the gun was in good operating condition and that the only way it would have discharged was by the pulling of the trigger. These facts do not sustain defendant's argument of accidental shooting.

Under an indictment for murder, the court may find the defendant guilty of the lesser included offense of voluntary manslaughter where the evidence supports a conviction for the lesser charge. (*People v. Horton* (1975), 29 Ill. App. 3d 704, 331 N.E.2d 104.) The statute defines voluntary manslaughter, *inter alia,* as the killing of an individual without justification while acting under a sudden and intense passion resulting from serious provocation by the individual killed. It also defines serious provocation as conduct sufficient to excite an intense passion in a reasonable person. Ill. Rev. Stat. 1973, ch. 38, par. 9—2.

■■ Where the probable natural consequence of the defendant's act would be to destroy life, the State is not required to introduce direct evidence of a conscious intent to kill in order to prove either murder or manslaughter. The necessary criminal intent may be implied from the character of the act. *People v. Robertson* (1975), 34 Ill. App. 3d 762, 340 N.E.2d 213.

■■ Defendant admitted surprise at seeing her husband without his coat in the Springfield Street building. She acknowledged his reluctance to allow her to accompany him to the apartment where she saw a closed bedroom door, but not her husband's coat. She also acknowledged that her husband requested her to wait downstairs and that when he came downstairs, he told her he was going to his mother's house. These factors support the court's conclusion that the incidents of that day created an intense, strong feeling in the defendant which upset her and caused her to shoot her husband. Where there is any evidence in the record upon which the court could find the defendant guilty of voluntary manslaughter, that

finding will not be disturbed on review. (*People v. Horton.*) We find that the circumstances disclosed by the evidence are sufficient to sustain defendant's conviction of voluntary manslaughter.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JOHNSON, P. J., and DIERINGER, J., concur.