(No. 27533.—

The People of the State of Illinois, Defendant in Error, *vs.* Luther Sain, Plaintiff in Error.

*Opinion filed November 19, 1943.*

Benjamin C. Bachrach, John M. Branion, and Frank J. Ferlic, for plaintiff in error.

George F. Barrett, Attorney General, and Thomas J. Courtney, State's Attorney, (Edward E. Wilson, John

T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Defendant, Luther Sain, twenty-eight years of age, was indicted in the criminal court of Cook county for the murder of Lulu Fells. He waived a trial by jury, and the court found him guilty of manslaughter. Motions for a new trial and in arrest of judgment were overruled. The court sentenced defendant to the penitentiary for a term of one to fourteen years, and, in accordance with the statute then in force, recommended that he serve a minimum sentence of seven years and a maximum of fourteen years. Defendant prosecutes this writ of error.

Lulu Fells was a negress who operated a gambling establishment on the third floor, front, 5417 Prairie avenue, Chicago. There was some evidence that she sold intoxicating liquors and furnished girls for men who frequented her apartment. She died as a result of being stabbed by defendant on the afternoon of April 5, 1942. Defendant admits the fatal stabbing, but insists that he acted in self-defense.

The uncontroverted testimony indicates that defendant, on April 5, twice visited the apartment of Lulu Fells; that on the second visit an argument ensued between them, culminating in defendant being asked to leave; that as he departed from the kitchen abusive language was indulged in by both; that when defendant objected to being called a particularly vile name she exclaimed "I will not only call you a bad name, I will do something else," and at the same time threw hot water in his face. According to the three eyewitnesses for the People, Lulu Fells thereupon passed from the kitchen to her front room, through a lobby or hallway where defendant was then standing and which served as a common entrance and exit to the front and rear apartments; that defendant immediately

followed her, and that the stabbing occurred in this front room. Dennis Chinn, in the kitchen when the argument commenced, moved to the front room when he saw Lulu Fells take what resembled a hunting knife from a drawer and defendant draw a knife. He testified that Lulu Fells entered the front room shortly, followed closely by defendant; that he did not see any weapon in the hands of either, but did observe defendant's hand go up and come down, after which he saw blood on Lulu Fells' forehead. Robella Watson and Moses Newby, who were in the hall at the time, testified that Lulu Fells threw water on defendant. Newby testified defendant chased her into the front room, where a "scuffle" was heard, and that she cried, "I am cut." Newby further testified that defendant left the room first, and that he walked "pretty fast" down the steps; that when Lulu Fells emerged she had a bleeding wound on her face, extending across her right eye, nose and left cheek. Neither Robella Watson nor Newby saw a weapon in the hands of either defendant or Lulu Fells. John McKeon, a police officer assigned to investigate the death of Lulu Fells, testified that defendant surrendered about ten o'clock in the evening of April 5; that he admitted the stabbing and informed the witness where to find his knife, introduced as People's exhibit 1, and that defendant stated he "lost his head and walked around and went in after her," at the time she threw the water on him.

It was stipulated that if Dr. R. N. Jefferson, a coroner's physician, were called as a witness, he would testify to a post-mortem examination of Lulu Fells, and that, in his opinion, death was the result of an incised wound of the left axillary with a severance of the axillary artery and hemorrhage.

As sole witness in his own behalf, defendant testified that on his second visit to Lulu Fells' apartment on April 5, he arrived about 3:30 P. M.; that shortly thereafter an

argument ensued over whether she had money enough to continue a game of dice, he contending she did not; that she called him a "damn liar," and brandished a knife; that he thereupon moved his hand toward his knife; that she ordered him to leave; that he proceeded to the hallway, where he met a girl and a man; that Lulu Fells, who was standing in the doorway, used vile language toward him, and when he replied, "Don't curse me," she said: "That ain't all I will do," again calling him an obscene name, and, at the same time threw hot water in his face, blinding him, and causing the skin to come off; that in her right hand she had a black-handled knife; that the water, in a kettle or aluminum pot, was in her left hand; that as she threw the water she came toward him with the knife drawn back; that he fled to the door, intending to go out; that he "saw her coming and figured she might cut me with the knife in her hand;" that he cut her while "trying to save myself or keep from getting killed," and that he did not return to her room. He further testified that he immediately went home, subsequently surrendered, was taken to the hospital by the police, and later placed in jail; that for two weeks he could not see out of his right eye, and that his left eye was also affected by the hot water. He denied informing the police that he cut Lulu Fells because he became angry when she threw the water on him.

It is contended the court erred in not permitting defendant, by his counsel, to cross-examine the police officer, McKeon, as to matters brought out on direct examination, or as to matters relevant to the issue, and that a proper cross-examination of this witness was rendered impossible because of the attitude of the trial judge. On direct examination, a written statement by defendant was produced and handed to McKeon to refresh his memory. Defense counsel objected to its use, arguing there was no difference between an oral and a written statement. McKeon then stated a police officer named Calhoun had taken the state-

ment, and that he, the witness, was in and out of the room during its transcription. The written statement was offered in evidence. Although counsel for defendant merely requested to see the statement, and did not formally object to its introduction, it was not admitted in evidence. On cross-examination, apparently on the theory that McKeon's testimony as to defendant's oral statement differed from the version contained in the written statement, counsel for defendant commenced reading excerpts from the latter, asking McKeon if he remembered defendant making the statements attributed to him. The prosecution objected on the ground that it was an attempt to impeach McKeon upon the basis of a written statement not formally introduced in evidence, and the court refused permission to counsel for defendant to so proceed. The matter of cross-examination of witnesses in a trial before a court without a jury is one which must necessarily be entrusted largely to the discretion of the presiding judge. (*People* v. *Barad,* 362 Ill. 584.) No abuse of judicial discretion is disclosed. The evident purpose of the People in handing the statement to McKeon was to refresh his memory as to whether a written statement had been obtained from defendant. No questions with respect to its contents were asked on direct examination, and, the statement having been excluded from evidence only because of the previous objection by defendant, cross-examination, under the circumstances, was properly limited to McKeon's version of defendant's oral statement to him.

Defendant's principal contention is as to the claimed insufficiency of the evidence to establish his guilt beyond a reasonable doubt, and, conversely, that self-defense was sufficiently proved. The evidence presents a conflict as to whether the attack occurred in the front room of Lulu Fells' apartment, as testified to by all the eyewitnesses for the People, or in the hallway, as contended by defendant. There is also the conflicting testimony as to whether

Lulu Fells was armed at the time of the attack. None of the eyewitnesses who testified saw any weapon in her hand when she appeared in the kitchen doorway, in the hall or in the front room. Defendant's version to the effect she had a knife in her upraised right hand and a kettle of water in her left presented such an unusual spectacle as to merit particular notice by eyewitnesses. It is apparent from the evidence that a continuation of the quarrel easily could have been avoided had defendant, instead of remaining in the hallway, departed from the premises in obedience to the order of Lulu Fells to leave her home. His persistence, in remaining, can be ascribed only to an evident desire on his part to court additional trouble. The trial judge saw and heard the witnesses testify. He had the opportunity to observe their conduct and demeanor while testifying and was in a better position to weigh their testimony than is a reviewing court. The law has committed to the trial court, where a cause is tried without a jury, the determination of the credibility of the witnesses and of the weight to be accorded to their testimony, and where the evidence is merely conflicting this court will not substitute its judgment for that of the trial court. *People* v. *Elder,* 382 Ill. 388; *People* v. *Overbey,* 362 Ill. 488; *People* v. *Bolger,* 359 Ill. 58.

Finally, it is urged that defendant was either guilty of murder or nothing at all, and, consequently, that the finding of guilty of manslaughter cannot stand. The vile language of Lulu Fells toward defendant, and her act of throwing hot water into his face constituted sufficient provocation to furnish the heat of passion required to establish that the homicide amounted to manslaughter. It was the province of the trial judge, a jury having been waived, to settle the conflict in the evidence and determine from the facts and circumstances whether defendant acted in self-defense, or, if not in self-defense, whether the circumstances attending the assault were such that her death

400

at defendant's hands constituted murder, manslaughter or justifiable homicide. *Hammond* v. *People,* 199 Ill. 173.

Although the evidence amply supports the finding of guilty, the sentence carrying a recommendation of minimum and maximum limits of imprisonment cannot stand. The portions of the Sentence and Parole Act upon which the advisory recommendation was based are unconstitutional and void. (*People* v. *Montana,* 380 Ill. 596.) Accordingly, the judgment must be reversed and the cause remanded to the criminal court of Cook county, with direc-, tions to enter a proper sentence.

*Reversed and remanded, with directions.*