STATE of Missouri, Respondent,

v.

Olon HALE, Appellant.

No. 50000.

Supreme Court of Missouri,

Division No. 1.

Oct. 14, 1963.

Thomas F. Eagleton, Atty. Gen., Richard R. Nacy, Jr., Sp. Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

Olon Hale was charged with and found guilty of murder in the second degree. Punishment was assessed at imprisonment in the penitentiary for a period of 10 years. Judgment was rendered accordingly. Defendant appealed but filed no brief. It is our duty to examine all of the assignments of error, lettered A to Q, in appellant's motion for a new trial. Supreme Court Rule 28.02, V.A.M.R.

From the state's evidence and the inferences reasonably to be drawn therefrom the jury could have found these facts: Appellant went to Pearl Ann Moore's third floor living quarters with a loaded pistol in his pocket for the purpose of trying to prevail upon her to resume their former status of living together out of wedlock. She told appellant that she did not want to go back to living with him, and did not want to see him anymore. Pearl said she was going to tell her sister (who lived on the second floor) and make appellant "get out of there." Appellant did not want Pearl's sister to know anything about their conversation. When he refused to leave Pearl "hollered"

twice for her sister, whereupon appellant produced the pistol from his pocket and cocked it. He tried to restrain her from leaving the third floor, grabbed her by the arm, pushed and tried to choke her. Pearl went out in the hallway on the third floor to call for her sister. When Pearl reached the head of the stairs, in an effort to escape, appellant intentionally fired the pistol at Pearl, not at close range. The bullet struck Pearl an inch or less behind the left ear, inflicting a wound which caused her death.

Appellant's evidence tended to show that the pistol was accidently discharged in the course of a friendly scuffle between appellant and Pearl for the possession of the gun, without any intent on his part to harm her.

Nine assignments of error relate to the rulings of the court in the admission of evidence.

A. The coroner's physican testified that he performed an autopsy on the body of Pearl Ann Moore and that the cause of death was a gunshot wound of the head with laceration of the brain and subdural hemorrhage. Appellant claims there was no evidence of the identity of the body upon which the autopsy was performed as that of Pearl Ann Moore. Pearl was taken to City Hospital No. 2, where she was treated, X-rayed and a tracheotomy performed. She expired 6½ hours after admission. The next day the coroner's physician performed an autopsy on the body of a woman identified in his report and in his testimony as that of Pearl Ann Moore, in the course of which he removed a bullet from her head and turned the bullet over to a detective in the homicide department. The bullet, Exhibit 8, was shown by ballistic tests to have been fired from the gun which appellant produced and identified at the trial as the gun with which he shot Pearl Ann Moore. This evidence was sufficient to identify the body upon which the autopsy was performed as that of Pearl Ann Moore.

B. Sergeant Fritsche testified that appellant first told the officers that he

scuffled with the woman and shot her as she was facing him; that the officers told appellant that was impossible, due to the way the woman was hit, the bullet having entered the back part of her head; that appellant then changed his story and made the incriminatory statement upon which the state relied for a conviction. At the trial this evidence was objected to on the ground that it was a conclusion of the officer, not responsive to the question. In the motion for new trial this evidence was challenged for an entirely different reason, i. e., that "said testimony was hearsay, was proof of an extrajudicial statement by the witness and invaded the province of the jury and was highly prejudicial." We cannot review this new and different assignment of error because it raises an objection not made at the time the testimony was offered. State v. Hernandez, Mo.Sup., 325 S.W.2d 494, and cases cited, 496 [3, 4].

■ C. It was established on cross-examination of Sergeant Fritsche that an official police report was prepared. The officer had read the report on the previous day at the homicide section of police headquarters. Counsel for appellant asked the officer if he would "go and get the report and bring it." On objection the court said: "I sustain that objection, and I won't order him to bring it, and it's not admissible if he does bring it, * * *." Exception was taken to the ruling and the court's remark on the ground that it was "totally unnecessary" and uncalled for; that counsel was trying to lay the foundation for possible impeachment of the officer by use of the police report; that the ruling informed the jury that defense counsel was attempting to produce illegal evidence and this prejudiced appellant in the eyes of the jury. There having been no showing as to the contents, materiality or relevancy of the police report, State v. Gilliam, Mo.Sup., 351 S.W.2d 723 [12], and no

showing that the report would have impeached the officer, State v. Cochran, Mo. Sup., 366 S.W.2d 360 [1],[1] no application for the issuance of a subpoena duces tecum under Supreme Court Rule 25.19, and no motion to produce and permit inspection under Supreme Court Rule 58.01,[2] there was no error in sustaining the objection to the request that the officer fetch the report. The court's suggestion that it would not be admissible was made in explanation of the reason why the court would not order the officer to produce the report. While unnecessary and better left unsaid, we find therein no prejudice to appellant's rights.

D. Appellant complains that the court improperly limited the cross-examination of Sergeant Fritsche on the question whether during the interview between the sergeant and appellant notes were taken and incorporated in the police report. The record does not bear out the complaint. Counsel for appellant repeatedly asked the sergeant if notes were taken, and the witness repeatedly denied that any notes were taken or memoranda made. We find at least nine instances in which counsel was allowed to make that very inquiry, and no instance in which the cross-examination was limited in this connection.

■■ E. The court sustained the state's objections to appellant's cross-examination of the sergeant in which the sergeant was asked whether he corroborated the information in the report; whether the report dealt with the facts to which the witness had testified, and whether the parts of the report pertaining to what happened when the witness was present were true, on the ground that the report itself was the best evidence of its contents and that the question called for a conclusion. Appellant asserts this was error "for the reason that defense counsel was attempting to lay a foundation for the

1. Compare State v. Lora, Mo.Sup., 305 S.W.2d 452 [9].

2. See State v. Miller, Mo.Sup., 368 S.W. 2d 353, and cases cited, l. c. 357, on the

availability of such procedure where, as the record here indicates, there was merely a suspicion or possibility that the report contained impeaching material.

possible impeachment of Sgt. Fritsche's testimony by use of the police report," for "defendant had reason to believe that the testimony given in Court was in direct conflict with the report * * *." There is nothing in the record to indicate any basis for appellant's stated belief that the witness' testimony conflicted with the police report. The police report was not the witness' report; was not prepared by him; was not used by him to refresh his memory while on the stand; was not referred to in his direct examination, and was not produced or introduced in evidence. A witness may not be cross-examined as to the contents of a written document which is not introduced in evidence, 58 Am.Jur., Witnesses, § 643, or not covered in the direct examination. 98 C.J.S. Witnesses § 391, p. 163, fn. 47; People v. Sain, 384 Ill. 394, 51 N.E.2d 557. There was no error in the court's ruling.

 F. Corporal Ferguson testified that Sergeant Fritsche had told appellant that his version of the shooting could not possibly be true, since the deceased was shot from the back. Appellant contends that it was error to receive this testimony over objection, because this statement is based on hearsay, and is a conclusion which invades the province of the jury, and is therefore incompetent, immaterial and highly prejudicial. This complaint is without merit for the reason that Ferguson's testimony was not offered as evidence of the truth of the fact asserted, but merely for the purpose of establishing the fact that the statement was made by the sergeant. The hearsay rule has no application where the extrajudicial utterance is offered " 'not as an assertion to evidence the matter asserted, but without reference to the truth of the matter asserted * * *.' " Wigmore on Evidence, § 1766, quoted in Mash v. Missouri Pac. R. Co., Mo.Sup., 341 S.W.2d 822, 827; Bond v. Wabash R. Co., Mo.Sup., 363 S.W.2d 1, 5.

 G. The assistant circuit attorney testified that as he arrived to interview appellant he encountered Lieutenant O'Neill who told him "this was one shot." It is objected that the court erred in not declaring a mistrial; that this was hearsay testimony, highly prejudicial because based upon an erroneous conclusion by the police officers as to how the shooting took place, and that it invaded the province of the jury. On objection the court said to the jury: " * * * whatever your verdict may be in this case, you are not to take into consideration what Lieutenant O'Neill told this man. That doesn't bind this defendant in this case. That conversation didn't take place. In this case, he is not bound by it. Don't base your verdict on that, and don't even remember it happened, just disregard it." The court's instruction constituted a sustaining of the objection, and the admonition to disregard went further on behalf of appellant than his counsel had requested. No other or further relief was asked; no motion was made for a mistrial. Appellant is in no position to complain. State v. Gerberding, Mo.Sup., 272 S.W.2d 230, 234 [5].

H. and I. The assistant circuit attorney, testifying about the interview with appellant stated that appellant at first maintained that he had pulled his gun out of his pocket and in the scuffle, as he was facing Pearl Ann, the gun went off accidentally. The assistant further testified: "I told him from the facts I had gathered it was impossible that this situation could have happened. * * * It was impossible this could have happened due to powder marks and so on. The girl was not shot as he was facing her, from what I had gained at that time. Mr. Hale told me—he said, 'All right, I want to get this thing off my chest. I want to get it off my mind. I will tell you what happened.' * * * Then I asked him what happened. He started to go into some details about the shooting. After two or three minutes' conversation, I thought I was getting the truth." There was an objection, a request to instruct the jury to disregard and to declare a mistrial. The court sustained the objection to the statement "I thought I was getting the truth" and directed the jury not to base their verdict upon the

statement or take it into consideration in rendering a verdict, the judge saying "That's stricken," but denied the request for a mistrial.

■ Appellant now excepts to the assistant's reference to impossibility due to (lack of) powder marks as "based on hearsay," an invasion of the province of the jury and prejudicial. At the trial no objection was made on these grounds, or any other grounds, to the statement with reference to impossibility due to (lack of) powder marks, so no such point has been preserved.

■ Appellant further excepts to the suggestion in the assistant's testimony that he thought he was getting the truth, as a conclusion made with intent to prejudice and that appellant was thereby prejudiced. While it would be improper for a prosecuting official to express his personal opinion by characterizing an incriminating statement as a recital of the truth, the assistant had not testified to any recital of facts by appellant in the course of which appellant had incriminated himself. The assistant's gratuitous characterization of what he considered the truth related to his very general testimony that appellant "started to go into some details about the shooting." He had not specified *what* details appellant had discussed. If this was error it was harmless, and was fully cured by the court's direction to the jury to disregard it. State v. Cooley, Mo.Sup., 221 S.W.2d 480, 486 [16].

■ J. In his opening argument the state's attorney told the jury that the circumstances of this case constituted murder in the second degree; that this was a serious case and that the type of verdict rendered would be serious not only to the defendant but also to the state, but did not specifically mention the matter of punishment. In the closing argument the state's attorney argued that this was an unnecessary killing, asked whether this man should be freed to go out and commit other crimes, and

then began to make the argument that a slight punishment in a case of this kind would encourage others to do the same thing. The latter argument was interrupted by objection of defense counsel after the state's attorney said these words: "When you tap people on the wrist and say, 'You have been a naughty boy, don't do that any more,'—Mr. Bruntrager: I object to that. This wasn't covered. The question of penalty * * * was not covered in the first half of the argument, therefore I haven't had the opportunity to answer this. I object to any reference now to this point in the last half." The court, aware of Shaw v. Terminal Railroad Ass'n of St. Louis, Mo.Sup., 344 S.W.2d 32, being of the opinion that the ruling in that case has no application in criminal trials, overruled the objection. State's counsel thereupon completed the "tap on the wrist" argument, pointed out that the jury was obliged not only to treat the defendant fairly, but had the burden of treating the state fairly, too, went on to say that "we have to put an end to this kind of killing," and concluded by urging that defendant be punished "severely" by conviction of murder in the second degree. He did not ask the jury to fix the punishment at any specific number of years. Defendant's counsel made no further objection after the first objection noted. Appellant now claims that the court erred in not sustaining his objection to the argument as to the penalty to be inflicted made in the last half of the closing argument which "had not been mentioned in the opening final argument for the state for the reason that defense counsel was then unable to answer or reply to said argument." This raises a serious question. Supreme Court Rule 4.22 requires candor and fairness on the part of a lawyer before the court. It declares that it is not candid or fair for a lawyer representing a side having the opening and closing arguments "to mislead his opponent by concealing or withholding positions in his opening argument upon which his side then intends to reply." As in the trial of civil cases, Shaw v. Terminal Rail-

road Ass'n of St. Louis, supra; Goldstein v. Fendelman, Mo.Sup., 336 S.W.2d 661, and cases and authorities cited, 1. c. 667 of 336 S.W.2d, so in the trial of criminal cases, it is improper and unfair for state's counsel, in final argument, to refer to points upon which the state relies which were not mentioned in opening argument, for the reason that the defense is thereby deprived of the opportunity to answer such new points. We approve the following excerpts from 23A C.J.S. Criminal Law, § 1089, pp. 125, 126: "The primary purpose of the concluding arguments of counsel is to enlighten the jury. The opening final argument for the people is intended to permit a statement of the case and of the law and the evidence and to uphold the right to a conviction, and *the prosecuting attorney should disclose therein all the points on which he relies in the case, * * * thereby giving counsel for accused a fair opportunity to answer him, * * *.* The argument for accused permits an answer to the prosecution on the law and the facts and the presentation of the defense. * * * The prosecuting attorney is entitled to reply to the argument for accused, but in so doing he cannot introduce any new line of argument not made in his opening argument. He must confine his closing argument to a fair discussion of the issues and to answering the argument of the defense. Where the prosecutor * * * presents points not referred to in his opening argument, or in the argument of accused's counsel, * * * the latter may and should be permitted to reply to the new arguments * * * offered * * *." (Our emphasis.) Whether the judgment should be reversed depends upon whether the trial judge, who has a large measure of discretion in such circumstances, abused his discretion, in the totality of the attendant circumstances. As in civil cases, Sullivan v. Hanley, Mo.App., 347 S.W.2d 710, the question in each criminal case must be determined upon its own peculiar facts. In his opening argument state's counsel, while not specifically referring to the penalty to be inflicted, did argue that the case

was a serious one, and that these circumstances constituted murder in the second degree. Second degree of murder carries with it a minimum penalty of 10 years, § 559.030, V.A.M.S., a matter as to which the jury had been informed by the instructions. There was, therefore, an oblique or implied reference to the question of penalty in the state's opening argument, which defense counsel had an opportunity to answer. (We are not advised whether defense counsel did so, because defense counsel's argument was not preserved in this transcript.) In view of the above references in the state's opening argument; the fact that in the closing argument state's counsel did not urge the jury to inflict any particular number of years' imprisonment as a penalty in this case, and that the only argument objected to (the "tap on the wrist, naughty boy" argument) was a comparatively mild and dispassionate suggestion, the final argument in this case should not be branded as improper and unfair. In consideration of these facts, plus the fact that defense counsel did not object when state's counsel became more direct and pointed in pressing the penalty argument, and did not ask for an opportunity to reply thereto, Sullivan v. Hanley, supra, 347 S.W.2d, 1. c. 716 [6]; 88 C.J.S. Trial § 169, p. 339, we find no abuse of discretion. That appellant was not prejudiced by the penalty argument and the lack of opportunity to reply thereto, is decisively and affirmatively demonstrated by the fact that the jury *assessed the minimum penalty* for second degree murder.

K. In the course of his argument the assistant circuit attorney said: "He [the defendant] wants you to think he was up there hugging and kissing and everything was hunky-dory. Why would he pull this gun out of his pocket anyway if everything was lovey-dovey? Why would he whip that gun out, maybe happy that the bullet was fired at her head—he hasn't demonstrated any sympathy to me in this courtroom. I have seen him laugh and smile throughout the trial." Defense

counsel objected to this as improper argument. After the assistant made it clear that he did not mean demonstration to *him* but meant "demonstrated any sympathy in the courtroom," the court overruled. There was no motion for a mistrial. Now it is urged that the court erred both in overruling the objection and in failing to declare a mistrial; that the argument was based upon a conclusion, and not on any evidence, and was highly inflammatory and prejudicial. If the argument was improper, appellant is precluded from claiming error in not declaring a mistrial because appellant did not request the court to declare a mistrial. State v. Michels, Mo.Sup., 255 S.W.2d 760. But there was no impropriety in the argument if the facts upon which it was based were true. Appellant has not shown that the statement about appellant's apparent lack of sympathy and pleased and carefree attitude about this death was not justified by the facts. The state had a legitimate right to comment upon the accused's demeanor in the courtroom. In State v. Harmon, Mo.Sup., 296 S.W. 391, the state's counsel referred to the "snarling look" the defendant gave the prosecuting witness during the trial. This Court, commenting on the fact that the trial court was cognizant of the defendant's conduct in this respect, sustained the action of the trial court overruling defendant's objection to this reference.

■ L. At another point in the state's argument, in attempting to account for the fact that appellant changed his first story that the gun was discharged while they were struggling, the assistant circuit attorney argued that appellant's conscience probably bothered him; that that is why he gave the incriminatory statement. Objection was made when the assistant argued "His conscience, probably, like the officer said—many times when a man commits a deed like this, his conscience bothers him." The ground of the objection was that there was no evidence of that in the record. There is a sufficient evidentiary basis for the argument, if such is needed,

in Sergeant Fritsche's testimony: "We told him the bullet entered the back part of the head. He said, 'All right, I want to make a clean breast of it. I will tell you just what happened.'" Furthermore, there was evidence that after appellant fled from the scene of the shooting he made phone calls to Pearl Ann Moore's house and to the hospital, inquiring as to her condition, and when he found that she had died from the gunshot wound, gave himself up to the police. The conscience argument was within the field of legitimate comment.

■ M. After some deliberation the jury asked for the signed statement of appellant and three photographs of the scene of the shooting. Over objection the court delivered these exhibits to the jury. The objection is that this singled out and gave undue emphasis to the signed statement "and completely ignored the oral testimony of defendant and the fact that he denied the material parts of" the signed statement. This was a matter resting within the sound discretion of the trial court, and no abuse of discretion has been shown. State v. Howard, Mo.Sup., 360 S.W.2d 718; State v. Smith, Mo.Sup., 357 S.W.2d 120.

■ N. After the trial court read the written instructions to the jury the court orally instructed that they were now free to discuss the case freely among themselves in arriving at a verdict, and no longer subject to the instruction given during the trial that they not talk about the case among themselves, "because the point has been reached in the trial where the case is submitted to you, and the law permits you, and I feel sure you will, discuss the case as freely among yourselves as will enable you to determine and find out what the verdict of all 12 of you may be. Any verdict, gentlemen, to be legally accepted in a case of this kind and to be legal must be agreed to by all twelve of the jurors. A divided verdict is not permitted in law in a case of this kind." It is now objected that the giving of this oral instruction was error in that "this is not the law of the State of

Missouri, and that it indicated to the jury that they must reach a verdict in the case and did not permit the exercise of free will of the jurors and was highly prejudicial." We rule that the oral instruction is the law; that it did not force the jury to return a verdict in the case or interfere with the exercise of the free will of the jury. The instruction requiring a unanimous verdict in a criminal case is ordinarily and more properly given in written form, but this is not a part of the "law of the case" which under Supreme Court Rule 26.02 must be in writing, and is not an oral "summing up," comment upon the evidence or charge as to a matter of fact, within the interdiction of Supreme Court Rule 26.09. We find no prejudice to appellant's rights in this connection.

It is further urged that the court should have instructed on self-defense. The claim is that there was evidence that deceased had forced appellant's hand in such a position that the gun pointed toward him just prior to his pushing the gun away from him and its discharge.

■■■■■ Self-defense in homicide involves a claim that a life was taken by an intentional, affirmative act, made necessary upon reasonable apprehension of a design on the part of the deceased to do the defendant great bodily harm. An accidental homicide involves an unintentional taking of human life. The two concepts are inconsistent. The defense in this case was that this was an accidental shooting; the unintentional discharge of the pistol in the course of a struggle for its possession. The evidence supported this theory and did not support any theory of self-defense.

■■■■ Appellant testified there were no bad feelings between the two. That morning he had taken Pearl around to the used car lots, looking for an automobile to purchase. He testified that just before the shooting they were "playing around," talking, hugging and kissing, as she lay on the bed. There was testimony that they

liked to play with guns; that on several previous occasions they had been seen in a "tussle," a friendly game in which they would try to take the gun away from each other. Appellant testified that on this occasion, when Pearl got up out of the bed, he grabbed her and put his arm around her; that he pulled the pistol out of his pocket and cocked it; that he did not mean to cock it; that Pearl grabbed the pistol and they engaged in a "tussle"; that Pearl shoved appellant and he shoved her; that the gun was pointed at him and he saw the barrel of the gun; that he took both hands and twisted the gun between them, her body bent, and the gun discharged. He claimed that he did not shoot it; that he did not have his hand on the trigger, and could not say whether he or she hit the trigger; that the "main thing" he was trying to do was not to touch that trigger. There is a complete absence of evidence of self-defense. Instead of showing an intentional shooting in defense of his person, upon reasonable apprehension of a design on the part of deceased to do him bodily harm, appellant's evidence indicates that he was desperately trying not to shoot the gun; that he grappled with her, not in an effort to shoot her, but to prevent the discharge of the gun; and that the killing was accidental. "His positive testimony that the shooting was accidental and unintentional would clearly negative any possible inference of self-defense based upon other facts appearing in his testimony. In this situation, it follows that there was no substantial evidence upon which a self-defense instruction could have been based." State v. Baker, Mo. Sup., 277 S.W.2d 627, 630 [5].

■■■■ O. and P. These assignments raised related questions, and will be dealt with together. In them appellant complains of the failure of the court to give an instruction on manslaughter *by culpable negligence*. He says the instructions ignored the evidence from which the jury could have found that the gun was accidentally, not intentionally, discharged but could have further found that the killing

occurred under circumstances which would not completely exonerate appellant, and therefore "the jury was deterred from finding the defendant guilty of the crime of manslaughter," with its lighter punishment. Appellant refers to the evidence that he was handling a loaded and cocked gun, knowing that it could be easily discharged, but that he did not discharge it intentionally. We add to this the evidence that he exhibited this cocked and dangerous pistol in the presence of Pearl, and near her, with knowledge on his part of her penchant for playing with guns and her history of playfully scuffling for the possession of guns, and that he permitted her to grab the pistol, thus precipitating the struggle which resulted in the tripping of the hammer and the killing of Pearl. This evidence would have justified the giving of an instruction on manslaughter by culpable negligence. State v. Baker, supra, 277 S.W., l. c. 630 [8]. The court did not give an instruction authorizing the jury to find appellant guilty of manslaughter by culpable negligence, but this was not error under the circumstances. The court gave Instruction No. 2 on the subject of manslaughter. After telling the jury that if they found defendant not guilty of murder in the second degree, they would consider whether defendant was guilty of manslaughter, and defining manslaughter as the killing of a human being not herein declared to be murder in the second degree or excusable homicide, the court instructed the jury to find defendant guilty of manslaughter if he intentionally shot Pearl, without malice and without premeditation, and under such circumstances that such shooting was not excusable homicide, and to acquit him of manslaughter if the jury failed to find these facts. Excusable homicide was defined as the accidental killing of another. The last paragraph of Instruction No. 2 follows:

"You are further instructed that if you find and believe from the evidence in this case that the defendant, Olon Hale, removed the revolver or pistol shown to you

in the evidence in this case, from his pocket and that thereafter said defendant and the deceased, Pearl Ann Moore, engaged in a struggle and that said revolver or pistol was discharged and shot and killed said Pearl Ann Moore, without the defendant, Olon Hale, using or operating the mechanism of said gun which would cause said gun to discharge or that said gun was discharged unintentionally by the defendant, Olon Hale, at the time that the deceased, Pearl Ann Moore was shot and killed, then you will find that the shooting and killing of said Pearl Ann Moore was accidental; and was excusable homicide."

The last paragraph directed the jury under the stated hypothesis *to acquit* (1) if he did not use the trigger, *or* (2) the gun was discharged unintentionally by appellant, without any other or further qualification, regardless of the circumstances which provoked the struggle; that is to say, even though the jury may have found that appellant exhibited a complete disregard and indifference for human life in cocking the pistol, exhibiting it, and tempting Pearl into a struggle for its possession, and therefore was culpably negligent. Appellant complains that the jury was not instructed under these latter circumstances to *convict* him of manslaughter. The error, if any, in not instructing on manslaughter by culpable negligence was an error in favor of the appellant and against the state, and he may not complain. Here, instead of instructing on manslaughter by culpable negligence, under which a conviction would have been possible, appellant was given a broad and all-inclusive instruction on accident more favorable to him than he was entitled to, under which he could not be convicted but *had to be acquitted* on the ground of excusable homicide if the jury found that appellant removed the pistol from his pocket, the parties engaged in a struggle, the gun was discharged without appellant using the trigger, or the gun was unintentionally discharged by appellant, i. e., upon the finding of *any kind* of an accidental discharge,

even if preceded by negligence of the most damning kind. A kindred case is that of State v. Brinkley, 354 Mo. 1051, 193 S.W.2d 49, in which defendant, convicted of second degree murder, contended on appeal that the court, which gave an instruction on manslaughter, failed to adequately instruct on that subject; that if properly drawn he would have been convicted of the lesser crime, if any. The given instruction defined manslaughter as any homicide not herein declared to be murder in the second degree or excusable or justifiable homicide, defined justifiable homicide as the killing of another in the lawful defense of one's person, and excusable homicide as the accidental killing of another, and submitted the question whether appellant killed the deceased without malice and premeditation, and in such circumstances that it was not justifiable or excusable homicide or self-defense. Not satisfied, appellant claimed error in failing to submit the manslaughter issue specifically on heat of passion engendered by lawful provocation. In overruling this assignment, this Court pointed out that the cases hold "that where, as here, excusable homicide is defined merely as an 'accidental' 'unintentional' killing, without more, the error if any is in defendant's favor, and he cannot complain."

Furthermore, Instruction No. 2 directed the jury to "find the defendant not guilty of manslaughter" if the jury did not find, beyond a reasonable doubt, "each and all of the facts" submitted, which included a finding of *intentional* shooting. Under Instruction No. 2, it would have made no difference how negligent appellant may have been, if the killing was unintended. See State v. Foster, 355 Mo. 577, 197 S.W.2d 313, 321 [16].

Points O. and P. are without merit.

■■■ Q. Finally, appellant attacks that part of Instruction No. 2 which appellant claims reads as follows: " 'Manslaughter,' is the killing of a human being

not herein declared to be Murder in the Second Degree and 'excusable homicide' " on the ground that it fails to properly define the crime of manslaughter, and is confusing and misleading in that it makes murder in the second degree and excusable homicide synonymous, in that the word "and" should be "or." The assignment that the instruction "fails to properly define the crime of manslaughter" is too general to preserve anything for review. State v. Tucker, 339 Mo. 101, 96 S.W.2d 21, 25 [4]. The assignment that the instruction is confusing and misleading in that it makes second degree murder and excusable homicide synonymous because the two are connected by the conjunction "and" instead of the word "or" is based upon a mistaken idea of what the transcript actually shows. The transcript, as it came to this Court, shows the word "and" blocked out and the word "or" placed above, so that the definition appears in the transcript as follows: " 'Manslaughter,' is the killing of a human being not herein declared to be Murder in

or

the Second Degree ~~and~~ 'excusable homicide.' " We must presume, in the absence of a showing to the contrary, that the instruction went to the jury in the disjunctive and not in the conjunctive.

We have examined the indictment, verdict, judgment and sentence, as required by Supreme Court Rule 28.02, and find them in proper form and sufficient.

The judgment is affirmed

COIL and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HOLLINGSWORTH, HYDE and HOLMAN, JJ., concur.

DALTON, P. J., concurs in the result.