(Nos. 28025, 28026.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES CRAWFORD, Plaintiff in Error.

*Opinion filed September 19, 1944.*

MARTIN O. WEISBROD, of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, all of Chicago, of counsel,) for the People.

Mr. JUSTICE SMITH delivered the opinion of the court:

These consolidated cases are here on writs of error to review separate judgments entered by the criminal court

of Cook county. In cause No. 28025, plaintiff in error was found guilty, on a trial before the court, of the crime of manslaughter. By the indictment in that case he was charged with the murder of Ernest Moreland. He was sentenced to the penitentiary for an indeterminate term. The indictment contained no separate count charging manslaughter.

Immediately upon the conclusion of the trial in that cause, by stipulation, cause No. 28026 was submitted to the court upon the evidence taken in cause No. 28025. By the indictment in that case plaintiff in error was charged with the murder of Morris Johnson. The indictment charged the crime of murder and there was no separate count charging manslaughter. The court found plaintiff in error guilty of manslaughter in cause No. 28026. He was sentenced to the penitentiary for a like term, the sentence to run concurrently with the sentence in cause No. 28025.

To reverse these judgments, separate writs of error were sued out of this court. The causes have been consolidated for opinion. Inasmuch as the charges were the same, except as to the party killed, in each case, and in view of the fact that they were submitted to the trial court upon the same evidence, the causes may be considered together in this opinion.

Plaintiff in error insists that the judgments should be reversed without remanding. He raises two questions: first, that under the evidence there is a reasonable doubt as to whether plaintiff in error was acting in self-defense and, second, it is contended that he should either have been found guilty of murder, or acquitted. It is contended that there is no evidence in the record to justify his convictions of manslaughter. Plaintiff in error, at the time of the shooting, was fifteen years of age, and at the time of the trial was six feet and four inches tall and weighed 175

pounds. He was younger, but larger than any of the others whose names are mentioned in the record.

The killings occurred on the sidewalk in front of a poolroom located on Calumet avenue, a short distance south of Forty-seventh street. Three eyewitnesses to the shooting, Fred Mathis, Luther Moseley, and John Robinson, testified for the People. Another eyewitness, Hobson, was in the army and was not called as a witness. The remaining eyewitnesses to the occurrence were the deceased Morris Johnson and Ernest Moreland.

The testimony of the three eyewitnesses to the killings was, in substance, that they, together with Hobson, Johnson and Moreland, were standing on the sidewalk facing the tavern; that plaintiff in error crossed Forty-seventh street on the west side of Calumet, walking south; that when he reached a point five to seven feet north of the point where the group was standing on the sidewalk, he drew a gun from his pocket or clothing and immediately commenced firing; that he fired five shots; that two of the group, Hobson and Mathis, took refuge in a nearby gangway; that when the shooting was over, plaintiff in error backed toward Forty-seventh street, which was thirty or forty feet north, and then disappeared; that Johnson was shot through the head and was lying at the east edge of the walk, partly in the street; that Moreland, who was a cripple on crutches, was also lying on the sidewalk. He had been shot through the abdomen and died shortly thereafter. This occurrence was on August 26, 1942. It is undisputed that plaintiff in error fled from the scene of the crime and immediately thereafter left the city of Chicago. He testified he went to Youngstown, Ohio, where he obtained employment. He returned to Chicago on November 10, 1943, and immediately surrendered to the police and admitted the killings.

Plaintiff in error testified that on the morning of the occurrence he had a fight with Hobson in the street, a short

distance south of the poolroom, in which he was badly beaten by Hobson. Mathis and Robinson were present at that time. It is not claimed by plaintiff in error that they participated in the fight between him and Hobson. Mathis and Robinson testified that immediately after the fight between Hobson and plaintiff in error, plaintiff in error ran into the house and returned with a large butcher knife; that armed with the knife he chased Hobson, Mathis and Robinson in the street. Plaintiff in error denied this.

Plaintiff in error further testified that Mathis, Robinson, Mosely and Hobson were "pals" and had molested him on prior occasions; that during the day Mathis had a fight with Emil Washington, a cousin of plaintiff in error. As to the particular occurrence which resulted in the killings, plaintiff in error testified that he was on his way to visit his cousin Emil; that when he left home he took his uncle's revolver for his own protection; that after he had passed the poolroom referred to, Hobson, Mosely, Johnson, Mathis and Robinson came out of the poolroom "and turned me around;" that during the discussion which followed, Mathis drew a revolver from his belt and tried to get the "safety" off. Plaintiff in error then drew his gun and fired three shots. He claimed he was shooting at Mathis in an attempt to make him drop his gun; that he fired the shots because Mathis was trying to shoot him; that immediately after the shooting he ran back to Forty-seventh street, west on Forty-seventh street and finally east on Forty-sixth street to his home; that he there procured some money and immediately left for Youngstown.

His only corroborating witness was Richard Brown, who testified that he was near the scene of the shooting at the time of the occurrence. Brown testified that as plaintiff in error passed the front of the poolroom, some fellows came out of the poolroom and "ruffled him up a little;" that two of the fellows grabbed plaintiff in error and at the same time he saw one of them pull something out of

his pocket, which he described as a black object. He was not able to identify it as a gun or any particular object. He testified that the shooting commenced immediately. Brown's testimony was, more or less, vague and indefinite. As corroborative evidence it adds little to the testimony of plaintiff in error.

Plaintiff in error testified that after the shooting he "stuck the pistol in my pants, and, in running it slipped down my pants leg and I didn't stop to pick it up." When arrested he told officer O'Donnell that it belonged to his uncle; that he "brought it home" and his uncle got it back. He also called two witnesses who testified to his good reputation as a peaceful and law-abiding citizen. In view of the undisputed facts shown in the record such evidence is of little value.

Section 155 of division I of the Criminal Code (Ill. Rev. Stat. 1943, chap. 38, par. 373,) provides that where the killing is shown, the burden of proving circumstances of mitigation or that justify or excuse the homicide will devolve upon the accused, unless the proof upon the part of the prosecution sufficiently manifests that the crime committed only amounts to manslaughter, or that the accused was justified or excused in committing the homicide. The crime of manslaughter is embraced in the charge of murder and under an indictment for murder, where a homicide is proved but proof of the requisite element of malice is lacking, a conviction for manslaughter is proper, if justified by the evidence. *People* v. *Turner*, 385 Ill. 344; *People* v. *Lewis*, 375 Ill. 330; *People* v. *Brindley*, 369 Ill. 486.

The law has committed to the trial court, where a cause is tried without a jury, the determination of the credibility of the witnesses and the weight to be accorded to their testimony. Where the evidence is merely conflicting, this court will not substitute its judgment for that of the trial court. *People* v. *Elder*, 382 Ill. 388; *People* v. *Overbey*, 362 Ill. 488; *People* v. *Bolger*, 359 Ill. 58.

As to the contention of plaintiff in error that he was either guilty of murder or nothing at all, and consequently the finding of guilt of manslaughter cannot stand, it was the province of the trial judge, a jury having been waived, to determine from the evidence whether the circumstances attending the assault were such that the killings constituted murder, manslaughter, or justifiable homicide. *People* v. *Sain,* 384 Ill. 394; *Hammond* v. *People,* 199 Ill. 173.

The judgments of the criminal court of Cook county in both cases are affirmed.

*Judgments affirmed.*