The People of the State of Illinois, Plaintiff-Appellee, *v.* Willie C. Stowers, Defendant-Appellant.

(No. 55017;

First District—July 9, 1971.

*Rehearing denied August 4, 1971.*

Julius Lucius Echeles, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Michael J. Goldstein, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant was indicted for the murder of James Willoughby (hereinafter "deceased"). After a bench trial defendant was convicted of voluntary manslaughter and was sentenced to a term of one to fifteen years. On appeal defendant contends: (1) that there was no evidence to support his conviction of voluntary manslaughter; (2) that sufficient time intervened between the provocation and the shooting to permit the voice of reason to be heard; (3) that if any crime was committed it was murder and not voluntary manslaughter; and (4) that there was insufficient evidence to establish that the cause of deceased's death was from a gunshot wound inflicted by defendant.

*Testimony of Shirley Banks, for the State:*

During the evening of October 26, 1968, she accompanied Rosie Childs and deceased to a party at 6020 Carpenter Street, Chicago. She had known deceased for about six months. The defendant was at the party. She left the party at approximately 1:30 A.M. on October 27, 1968, in the company of Mrs. Childs and deceased. She and Mrs. Childs got into deceased's car which was parked across the street from 6020 Carpenter, but deceased stopped to speak with a man. While deceased was talking "the defendant came up and pushed both of them apart, he pushed the other man down." This other man then got up and ran away. Deceased was not fighting with this other man. After defendant pushed deceased, defendant ran across the street and deceased got into the driver's seat of his car. Defendant then came back to the car and told deceased "I'm going to kill you." Deceased said, "Don't shoot me." Defendant pointed his gun low and shot deceased. Defendant said, "I'm going to shoot this black mother — — — again, I ought to kill all three of you." The witness told defendant, "Don't shoot him no more because you already shot him once." She noticed that defendant appeared to be cut on the forehead, and "blood was running down his face."

On cross-examination the witness testified that after defendant pushed

the deceased, defendant ran across the street to the house next door to where the party was held, threw off his jacket, spoke to a stranger on the steps and ran back to the car to fire at deceased. Defendant spoke to this man on the steps "no longer than it takes to throw off his jacket and come back across the street." In the meantime deceased was looking for his car keys. "There wasn't that much time elapsed since the boy [defendant] ran across the street."

Before the Grand Jury she said, "Willoughby [deceased] was hit with a can of beer." However, on cross-examination she said deceased was not hit with a beer can. She did see a can of beer thrown.

She never saw defendant fall to the ground. After the shooting deceased drove to the hospital.

*Testimony of Rosie Childs, for the State:*

Her testimony was substantially the same as that of Shirley Banks. After defendant had pushed deceased, deceased immediately entered the car "fixing to start it up" when defendant came back over from crossing the street and shot deceased. The lapse in time between the pushing incident and the shooting was "about two minutes." At the time of the shooting she observed blood coming down defendant's face.

She did not see defendant on the ground at any time. Defendant shot deceased in the side.

*Testimony of Thomas Ptak, for the defense:*

He is a police detective in the City of Chicago. On October 28, 1968, Shirley Banks told him that she saw a man throw a can of beer at defendant, striking defendant in the head. She did not know who threw the can of beer, but it was not deceased.

*Testimony of Rose Smith, for the defense:*

She is defendant's girl friend. On October 26, 1968, she and defendant went to a party at 6020 Carpenter around midnight. Upon leaving the party with defendant, defendant was assaulted by deceased and a man named Curry. Curry and defendant exchanged blows. "And then this fellow Willoughby hit Mr. Stowers in the head with a can of beer." Defendant fell to the ground and stayed there until she helped him walk to the hospital. She did not know where deceased went.

Defendant did not shoot deceased and he never had a gun in his possession on October 27, 1968.

On cross-examination she testified that she did not hear any loud noises or explosions during the incident. She was with defendant at the time the police came to defendant's home. The police told defendant that "they want some woman to see him to identify him for shooting Willoughby." She did not say anything to the police at this time.

*Testimony of Susan Pruitt, for the defense:*

Defendant is her cousin. She lives at 6016 Carpenter, next door to where the party was held. Around 1:30 A.M. on October 27, 1968, she heard a gun fired. She went to the front porch where she observed defendant lying on the ground. She did not go to help him nor did she call the police. She thought defendant was dead.

*Testimony of Edith Stowers, for the defense:*

She is defendant's mother. Defendant's Exhibit 1 is a bill from Englewood Hospital for $15.50 for the treatment of defendant.

*Testimony of Willie Stowers, defendant, in his own behalf:*

On October 27, 1968, he attended a party with Rose Smith at 6020 South Carpenter. When he went to the party he did not have a gun with him. At about 1:30 A.M. he and Rose Smith left the party. As he was walking out of the front door James Willoughby and another man began pushing him. The other man hit him in the face, he hit this other man in the face and this man fell over the porch and came back at him with a board. The fight continued in the street until this other man ran away. Then as the witness went back to get Rose, deceased hit him in the head with a can of beer. "That is all I remember, I fell down." He did not remember walking to the hospital with Rose until she told him that is what they did. His injury required stitches. After he was released from the hospital he went home. He was arrested during the early morning of October 27, 1968. He denied that he shot deceased.

*Testimony of Thomas Ptak, for the State, in rebuttal:*

He arrested defendant during the morning hours of October 27, 1968. After he advised defendant of his constitutional rights defendant said "that James Willoughby was the one who hit him with the beer can and after that he doesn't remember a thing."

It was stipulated between the parties that if called to testify, Dr. Patrick Garry, a pathologist with the Cook County Coroner's Office, would testify that on November 8, 1968, he examined the remains of deceased and would state that deceased died of a bullet wound of the abdomen, transverse colon.

It was also stipulated that if Alphonse Willoughby were called to testify he would state that he was the son of deceased; that deceased was fifty-one years old on October 27, 1968; that he saw deceased on the morning of October 26, 1968; that deceased was in good health with no physical or mental defects; and that when he again saw deceased on November 8, 1968, deceased was dead.

It was further stipulated that the records of the Englewood Hospital showed that defendant had a laceration above the head which was treated and, "The patient states he was hit in the head with a beer can."

*Opinion*

Defendant contends that there was no evidence to support his conviction for voluntary manslaughter. He argues that there was no evidence of "sudden and intense passion resulting from serious provocation." Voluntary manslaughter is defined in section 9—2 of the Criminal Code, Ill. Rev. Stat., 1967, ch. 38, sec. 9—2, as follows:

"(a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) The individual killed, * * *.

Serious provocation is conduct sufficient to excite an intense passion in a reasonable person."

In the instant case defendant denied that he shot deceased. However, defendant did testify that deceased and another man pushed him as he left the party with Rose; that he fought with this other man; that deceased hit him in the forehead with a can of beer; that he fell down and remembered nothing that happened thereafter; and that his forehead wound required stitches.

Defendant's assertion that deceased hit him with a beer can was corroborated by Rose Smith. Moreover, it was stipulated that on the night of the shooting defendant was treated at the Englewood Hospital for a "laceration of the head."

That defendant received a head wound was also testified to by the State's witnesses, Shirley Banks and Rosie Childs. They were present when defendant shot deceased, and they both testified that when defendant came over to deceased's car he appeared to be cut on his head since blood was running down his face.

The sufficiency of the provocation to cause sudden and intense passion is a matter to be determined by the trier of fact. (*People v. Binion*, 132 Ill.App.2d 257, 267 N.E.2d 715, and *People v. Hurst*, 42 Ill.2d 217.) We find that defendant's claim that he was attacked by deceased and hit in the head with a beer can, if believed by the trial court, was sufficient provocation to arouse a sudden and intense passion in defendant.

Defendant next claims that sufficient time intervened between the provocation and the shooting to permit passions to cool and the voice of reason to be heard. Defendant cites *People v. McMurry*, 64 Ill.App.2d 248, and *People v. Tanthorey*, 404 Ill. 520, in support of his claim. However, these cases are distinguishable from the instant case. In *McMurry* the provocation consisted of mere words and there was a five or six minute interval between the words and defendant's killing of deceased,

which the court held to be a sufficient period of time to negate the possibility that defendant was acting under a sudden and intense passion.

In *Tanthorey* the provocation created by deceased against defendant was, at best, that deceased stepped on defendant's toe. Furthermore, a "few minutes" elapsed after defendant left the deceased before deceased again saw defendant some 325 feet from the tavern where the alleged provocation occurred.

In the instant case Shirley Banks and Rosie Childs both testified that defendant pushed deceased, ran across the street where he threw off his coat and returned to shoot deceased before deceased could start his car. Mrs. Banks stated that defendant was gone "no longer than it takes to throw off his jacket and come back across the street," while Mrs. Childs said the lapse of time was "about two minutes." Both women also testified that they noticed defendant was bleeding from the head when he shot deceased, and defendant indicated that after he was hit in the head he fell down and could not remember walking to the hospital. In *People v. Harris*, 8 Ill.2d 431, the defendant was beaten to such an extent that he did not know where he was or who assisted him from the tavern. As the court stated at page 435:

> "What constitutes a sufficient 'cooling-off period' depends upon the extent to which the passions have been aroused and the nature of the act which caused the provocation (27 Am.Jur., Homicide, sec. 24), and, for that reason, no yardstick of time can be used by the court to measure a reasonable period of passion but it must vary as do the facts of every case. Humans react violently to the infliction of a serious injury, and the degree of pain which results therefrom not only governs the passion itself but also influences the duration of the cooling period."

See also *People v. Walker*, 55 Ill.App.2d 292, and *People v. Hough*, 102 Ill.App.2d 287.

■■ We believe that there was an insufficient cooling off period for the voice of reason to return.

■■ Defendant also contends that either he is guilty of murder, or he is guilty of no offense at all. However, as herein shown, the record contains evidence upon which a voluntary manslaughter conviction can be based. Under an indictment for murder the trial court may find the defendant guilty of the lesser-included offense of voluntary manslaughter and an accused has no right to limit the court's determination of guilt or innocence on the murder charge where the evidence would support a conviction for the lesser offense. The fact that the evidence would have justified the court in finding defendant guilty of murder is not a matter of which he can complain. *People v. Sain*, 384 Ill. 394; *People v. Treger*,

320 Ill. 329; and *People v. Binion, supra.* See also *People v. Green,* 23 Ill.2d 584; *People v. Wiggins,* 12 Ill.2d 418; *People v. Fox,* 133 Ill.App.2d 89.

Defendant next argues that there was insufficient evidence to establish that the cause of deceased's death was from a gunshot wound inflicted by him. The testimony presented by the State established that during the morning hours of October 27, 1968, deceased was shot by defendant. It was stipulated that if Dr. Garry, a pathologist with the Cook County Coroner's Office, was called to testify he would state that on November 8, 1968, he examined the remains of deceased and that deceased died of a bullet wound of the abdomen, transverse colon. It was further stipulated that if Alphonse Willoughby, deceased's son, was called to testify, he would state that deceased was fifty-one years old on October 26, 1968; in good health, with no physical or mental defects; and that the next time he saw deceased on November 8, 1968, deceased was dead.

In support of his argument that this evidence was insufficient to connect the shooting of deceased on October 27, 1968, to deceased's death on November 8, 1968, defendant cites *People v. Martin,* 26 Ill.2d 547, and *People v. Benson,* 19 Ill.2d 50. However, in both of these cases the criminal act was not of such a nature as would normally cause death and the relationship between the criminal agency and the cause of death was left to inference and speculation. In *Garmon v. People,* 76 Ill.App.2d 24, the defendant argued that there was insufficient proof as to the cause of death. However, as the court stated at page 27:

> "No evidence was offered nor does the record suggest that any supervening act disconnected from the original criminal agency was the cause of death. In *People v. Meyers,* 392 Ill. 355, 64 N.E. 2d 531 at page 533, the court stated that:
>> 'The law is that when the state has shown the existence, through the act of the accused, of a sufficient cause of death, the death is presumed to have resulted from such act, unless it appears death was caused by supervening act disconnected from any act of the defendant.'"

■■ In the instant case the record does not suggest any supervening act disconnected from the shooting of deceased by defendant as the cause of death. We find that there was sufficient evidence for the trial court to believe that the gunshot wound inflicted by defendant upon deceased was the cause of death.

The judgment is affirmed.

Judgment affirmed.

ENGLISH, P. J., and LORENZ, J., concur.