THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEON YOUNG, Defendant-Appellant.

(No. 56151; )

First District (1st Division)—April 16, 1973.

Gerald W. Getty, Public Defender, of Chicago, (Michael Weininger and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane, Cary A. Lind, and Ronald Neville, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE EGAN delivered the opinion of the court:

The defendant, Leon Young, was indicted for the murder of Julius Robinson; he waived a jury and was found guilty of voluntary manslaughter and sentenced to a term of 6 to 14 years. The defendant contends on appeal that he was not proved guilty beyond a reasonable doubt.

Phillip Robinson, no relation to the deceased, called by the State as a court's witness, testified that he was having a birthday party in his home at 4728 South Prairie in Chicago on October 12, 1969. The defendant, whom he had known for over a year, came in from the back about midnight accompanied by a man and a woman. He noticed that the defendant was wearing a holster with a gun in it. He told the defendant to leave because of the way he was acting; he knew the defendant had had too much to drink. The defendant left with his friends. Later, about

daybreak, he heard a loud bursting noise come from the kitchen. Some-one told him Julius Robinson had been shot and he went into the kitchen. He saw Leon Young going out the door, "not really fast, but not really slow." Julius was between the sink and the stove, coughing; he was turned around and he had a knife in his hand. Phillip Robinson took the knife and laid it on the table. The police were called. He looked out and saw the defendant and his companions "speeding away" in a car. He later observed that the window over the back door lock had been broken. The defendant was the only guest that came in from the back. He had invited the defendant to the party. He had testified before the coroner's jury and grand jury that he had not invited the defendant. At trial he explained that when he had previously testified he meant that he had not given the defendant a written invitation. When he made a written statement to the police he did not mention a knife in the hands of the deceased. He did not notice any blood on the knife. He had been drinking heavily that morning and night.

Clifford Wright testified on behalf of the State that he saw the defend-ant and his friends enter through the back door after pushing it in. He helped the defendant off with his coat because the defendant had cut his hand. He noticed that the defendant was wearing a shoulder holster with a gun. Later he saw the defendant arguing with a woman; the defendant pushed her and came at her with a gun. Someone told the defendant to leave, and he did. Some time later he heard some noise in the kitchen. From where he was sitting, he could see into the kitchen. He saw the defendant pull out the gun and fire, but he could not see at whom the defendant was firing. He ran into the kitchen and saw the deceased near the table "gagging" for air; the defendant was putting the gun into his holster. The deceased fell to the floor. There was no knife, or anything else, in the hands of the deceased. He saw the defendant leave. Phillip Robinson was not in the kitchen when he first went in after the shot was fired.

Aureia Zackary testified that she arrived at the party a little after 5:00 A.M., with the deceased, and her employer, Mr. Lang. They were having a drink in the dining room when the deceased went into the kitchen. She heard a shot and immediately ran into the kitchen where she saw the deceased lying on the floor. Phillip Robinson was not in the kitchen. She did not see a knife in the deceased's hand or near his body. She did not see the actual shooting.

Arthur Lang testified that when he arrived at the party with the deceased he noticed that the window in the back door was again broken; he had fixed it only two days earlier. He entered the kitchen after he heard Mrs. Zackary scream. The deceased was lying on the floor. There

was no knife in the deceased's hand or lying by his body. He did not see the person who did the shooting. He did not look around for a knife. The deceased had gone into the kitchen to get a glass.

Harold Leonard Roebuck testified for the defense that he and his wife, Beverly, came to the party with the defendant. They came in the back way. The defendant cut his hand when he knocked on the door, and he gave the defendant a scarf to wrap around the cut. When the defendant took off his jacket, he did not notice a shoulder holster or a gun. He did not have anything to drink; but on cross-examination he said he might have had one beer. He told the defendant that he was ready to leave. The defendant was not unruly at the party; he was sober. After they left the party, they drove around for 20 minutes. When they realized that the scarf had been left at the party, they went back for it. After returning to the party they looked for the scarf but could not find it. They were getting ready to leave for the second time. He cut a piece of cake and laid the knife down on the kitchen table. The defendant started to light a cigarette on the kitchen stove. As he was moving a pot on the stove, the deceased asked him what he was going into the pot for. The defendant answered he was moving it; they had a few words. The deceased then picked up the knife and swung it at the defendant. Roebuck jumped back and heard a shot. He did not see the shooting, but he did see the defendant standing there with the gun in his hand. After the shot, a lady and Phillip Robinson came into the room. The deceased was standing there with the knife in his hand. He, his wife and the defendant left together. He let the defendant out of his car at 62nd and Harper. He had been convicted of burglary and had been placed on probation. He believed the defendant was cut on the left wrist. He had testified at a bond hearing that the defendant was cut on the right wrist. He first saw the gun after the shot was fired. At a bond hearing he had testified he saw the defendant fire the shot.

The defendant testified that he arrived at the party with Roebuck and his wife. He had been verbally invited by Phillip Robinson. He cut his finger when he knocked on the back door. Roebuck lent him a scarf to put around the cut. During the party he drank a beer. The cut on his hand started to bother him so he decided to leave. After they had left and driven about seven or eight blocks, he realized that he had left Roebuck's scarf at the party, and they returned to get it. They could not find the scarf and decided to leave again. He stopped in the kitchen on his way out to light a cigarette on the stove. He moved a pot over and was lighting the cigarette when the deceased, whom he did not know, asked him what he was doing messing with the pot. An argu-

ment ensued, and the deceased picked up a knife and started to slash at the defendant; the defendant was cut on the left wrist and chest. He backed up, but the deceased, who was larger than the defendant, continued to slash with the knife. He remembered that he had in his pocket a gun which had been given to him that day by a young lady named Peaches for safe-keeping. He was not wearing, nor did he own, a holster for the gun. He pulled the gun from his coat and shot upwards in an attempt to frighten the deceased, who was about an arm's length away when he shot him. He did not know the gun was loaded. He left with Mr. and Mrs. Roebuck immediately after the shooting. He dropped the gun in the back of the building where the shooting occurred. The deceased was still standing when they left. He did not know whether he had shot the deceased. It was about two weeks later that he heard about the deceased's condition. Between the date of the shooting and his arrest a month later, the defendant continued to live at the same address, 6236 South Harper; but during this time he was continually in and out of town. He gave the police his mother's address, 6915 Parnell.

Lola Jordan testified in rebuttal that the defendant was wearing a shoulder holster. When she saw the defendant he appeared to be drunk. She was asleep when the shooting took place.

Michael Griegel also testified in rebuttal that he searched for physical evidence after the shooting both inside and outside the house and he did not find a gun. He did not see a cake on the kitchen table. He talked to Phillip Robinson; no one ever told him that the deceased had a knife. He visited 6915 Parnell and 6236 Harper on a number of occasions in the early morning hours and did not find the defendant.

It was stipulated that Joseph S. Price would testify that he was a microanalyst employed by the Chicago Police Department. He conducted a spectroscopic and microscopic examination of the undershirt and outershirt of the deceased; he found a single perforation in each of the garments; there was no powdery dust nor scorched fabric in the area surrounding the perforations.

By stipulation, Officer Thomas Dwyer, who had testified in chief that he arrested the defendant, testified that the defendant gave his address as 7925 South Greenwood.

The trial court found the defendant guilty of voluntary manslaughter under section 9—2(b) of the Criminal Code. (Ill. Rev. Stat. 1969, ch. 38, par. 9—2(b).) That section provides:

"9—2. Voluntary Manslaughter.

\* \* \*

(b) A person who intentionally or knowingly kills an individual

commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable."

Section 7—1 provides:

"7—1. Use of Force in Defense of Person. A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." Ill. Rev. Stat. 1969, ch. 38, par. 7—1.

The defendant's argument may be summarized: If the court accepted the theory of the State, that the deceased was unarmed, then the evidence would lead to no other conclusion but that the defendant was guilty of murder. However, since the court by its finding of not guilty of murder perforce rejected the evidence that the deceased was unarmed, it was obliged to accept the only eyewitness testimony—the defendant and Roebuck. That being so, and since their testimony clearly shows that the defendant acted in self-defense, he must be not guilty.

The same argument, that the evidence shows murder or nothing, has been raised, although not couched as syllogistically as here, in the following cases, all of which affirmed conviction, involving findings of guilty of manslaughter by a court under an indictment for murder: *People v. Green*, 23 Ill.2d 584, 179 N.E.2d 644; *People v. Wiggins*, 12 Ill.2d 418, 147 N.E.2d 80; *People v. Franklin*, 390 Ill. 108, 60 N.E.2d 870; *People v. Crawford*, 387 Ill. 616, 56 N.E.2d 805; *People v. Sain*, 384 Ill. 394, 51 N.E.2d 557; *People v. Binion*, 132 Ill.App.2d 257, 267 N.E.2d 715.

From these cases a number of principles appear:

■■ ■ The defendant may not complain of a finding of guilty of manslaughter where the evidence shows that he could have been found guilty of murder.

■■ ■ Where the deceased was killed by a shot from the gun in the hands of the defendant, the burden is on him to prove circumstances mitigating, justifying or excusing his acts, unless it was sufficiently manifest from the proof on the part of the prosecution that he was justified or excused in committing the homicide.

■■ ■ A jury having been waived, it is the province of the trial judge to determine from the facts and circumstances whether the defendant acted in self-defense, or, if not in self-defense, whether the circumstances

attending the act were such that the killing constituted murder, manslaughter, or justifiable homicide.

■■ The defendant does not argue, nor do we believe he could, that the evidence could not support a finding of murder. Nor can we say that the proof on the part of the prosecution sufficiently manifests that the defendant was justified or excused in committing the homicide. The trial judge was not compelled to accept the accounts of the defendant or his witnesses as conclusive, but could properly consider the surrounding circumstances and the probability or improbability of their stories. (*People v. Wiggins*, 12 Ill.2d 418, 423, 424, 147 N.E.2d 80.) A fact finder could accept the following as true: the defendant was armed with a loaded pistol, carrying it in a shoulder holster; he had previously threatened a woman with the pistol; he was so drunk and unruly that he was requested to leave; despite that request, he returned ("His persistence, in remaining, [could] be ascribed only to an evident desire on his part to court additional trouble." *People v. Sain*, 384 Ill. 394, 399, 51 N.E.2d 557); the deceased, 43 years of age, had finished working a short time before he came to the party; he was sober and went into the kitchen to get a glass; he was shot by the defendant a few minutes later while he was unarmed; the defendant fled and disposed of the weapon; he remained away from his home and his mother's home for over a month and gave the police a false address when arrested. See *People v. Crawford*, 387 Ill. 616, 618, 620, 56 N.E.2d 805.

That evidence discloses a picture of a dangerous, surly drunk, looking for trouble, quick to anger and quick to use a loaded weapon, who, conscious of his guilt, fled and remained in hiding.

■■ The trial judge, as finder of fact, was not required to accept nor reject the testimony of any witness in toto. And although he made no specific findings of fact, he could have concluded that there was an altercation between the deceased and the defendant; that the deceased did not have a knife but did curse and threaten the defendant; and that the defendant in his drunken condition may have believed that his conduct was necessary; but that his belief was unreasonable.

The cases cited by the defendant are either factually inapposite or were reversed on other grounds. In *People v. Jordan*, 4 Ill.2d 155, 122 N.E.2d 209, the only evidence of the occurrence consisted entirely of various statements of the defendant, which, although contrary to each other as to how the defendant struck the deceased, all made out a case of self-defense. The court held there was no evidence from which the jury could conclude otherwise. In *People v. Lewellen*, 43 Ill.2d 74, 250 N.E.2d 651, the court held that the circumstantial evidence was not sufficient to rebut the defendant's testimony of self-defense. In *People*

*v. Williams,* 56 Ill.App.2d 159, 205 N.E.2d 749, the undisputed evidence showed that a gang of boys were beating an old man; when the defendant sought to assist him, a brick and cement block were thrown at his cab; the court held under the circumstances the defendant reasonably believed he was in danger of suffering great bodily harm. In *People v. Durand,* 307 Ill. 611, 139 N.E. 78, and *People v. Willy,* 301 Ill. 307, 133 N.E. 859, the Supreme Court remanded for a new trial because of improper instructions concerning self-defense. In *People v. Morgan,* 114 Ill.App.2d 421, 252 N.E.2d 730, the evidence showed that the defendant was a security guard who attempted to arrest the deceased, with whom he had had a previous altercation the night before. The eyewitness testimony showed that the defendant had taken out handcuffs while he was talking to the deceased just before the shooting. The court held that the evidence was insufficient to rebut the defendant's contention that he had acted in self-defense. Parenthetically, we note the language in that case responsive to the argument of the defendant here (p. 426):

> "The contention of the defendant that the finding of guilty of voluntary manslaughter where he had introduced evidence of self-defense constitutes a compromise is untenable. This argument assumes that whenever a person believes that deadly force is necessary to protect himself from death or great bodily harm his belief must be reasonable. If that proposition were correct a factual situation could not arise where section (b) of the statute would be applicable."

■■ For the foregoing reasons we conclude that the defendant was proved guilty of voluntary manslaughter beyond a reasonable doubt. The judgment of the circuit court is affirmed.

Judgment affirmed.

BURKE, P. J., and GOLDBERG, J., concur.