THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN
THOMPSON, Defendant-Appellant.

(No. 57328;

First District (5th Division)—April 27, 1973.

Robert B. Rosen, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Douglas Cannon,
Elmer C. Kissane, and James T. J. Keating, Assistant State's Attorneys,
of counsel,) for the People.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

## OFFENSES CHARGED

Two counts of murder. Ill. Rev. Stat. 1969, ch. 38, pars. 9—1(a)(1) and (2).*

## JUDGMENT

After a bench trial, defendant was found guilty of voluntary manslaughter and was sentenced to a term of not less than 4 nor more than 10 years.

## CONTENTION RAISED ON APPEAL

There was insufficient evidence to establish all elements of the offense of voluntary manslaughter beyond a reasonable doubt.

## EVIDENCE

*Amelia Currie,* for the State:

She is defendant's mother-in-law and the mother of the deceased, Olivia Thompson. On May 19, 1971, Olivia spent the entire day with her at her home in Chicago, Illinois. At about 8:30 P.M., defendant came to her house. He did not speak to her at that time, but briefly spoke to Olivia, telling her that she could not get her clothes at their apartment that night because he had some business to take care of. Defendant then left, but returned later that night, about 12:30 A.M. She, her daughter, and defendant were in the living room when he asked, "Olivia, what is you going to do?" Her daughter answered that she just wanted to get her clothes. Then the witness said to defendant, "I thought you said she couldn't get them tonight." Defendant answered, "I done took care of my business and I wants her to get them damn clothes tonight * * * I am tired of this woman acting like she acting. I done told her this once before. She keep on messing around, and this is one woman I am going to kill." Defendant then told her daughter to come on, and they both left the house together, got into the car, and drove away. There had been no argument between defendant and her daughter immediately prior to their leaving, and defendant did not force her to leave with him. The witness saw no reason to call the police at that time. Upon leaving, her daughter was wearing a flowered dress with a checkered coat and white slippers. Her daughter drank frequently, but had not been drinking that day.

---

* *Murder.* (a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:
 (1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or
 (2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another;

She called defendant the next morning, and he told her that Olivia had left the car the night before and that he did not know where she was.

On May 21, 1971, the witness went to the police station and spoke with Officer Banahan. He had her look at a photograph which she identified as that of her daughter.

*Bernard Banahan,* for the State:

He is a Chicago police officer assigned to homicide investigation. On May 21, 1971, Amelia Currie came into the station to report that her daughter was missing. He showed her a picture of the deceased, whom she identified as her daughter. Later that afternoon, he and his partner went to the U.S. Steel Co. to speak with defendant. He told him that he was being arrested for murder, and advised him of his constitutional rights. With defendant's permission, he searched defendant's car and found a man's black trench coat with a red stain on the sleeve. He brought defendant to the station, again advised him of his rights, and had another conversation with him. Defendant related to him that the last time he had seen his wife alive was when he had picked her up from her mother's house at about midnight on May 19, 1971; that on their way home, they had stopped at a liquor store, and when he returned from the store with a bottle of scotch, his wife had not been in the car; that they had not had an argument and were on friendly terms at the time.

When the witness told defendant that his mother-in-law's account of what had happened at her home contradicted his and that when his wife's body was found, she was wearing clothes other than those described by her mother, defendant changed his story to say that he had had an argument with his wife when they arrived home, that they began to fight, and that he had struck her with his fists several times. (There was no evidence that defendant's physical appearance gave any indication of his having been in a fight.) Defendant went on to say that when she fell to the floor and he could not wake her, he dragged her from the house to the car and disposed of her body in an alley near 53rd and Indiana, throwing her purse in another alley a few blocks away. Defendant did not relate to him what his wife had been wearing.

He asked defendant if he would sign a statement as to what he had admitted, but defendant refused.

The body was recovered in the alley behind 5346 Indiana, about two blocks south of defendant's residence. The purse was found by someone who lived at 4939 S. Wabash.

*James E. Dvorak,* for the State:

He is a Chicago police officer. On May 20, 1971, at about 6:50 A.M., he and his partner observed a female Negro clad in a white pants suit

and one black leather shoe lying face up in an alley behind 5346 S. Indiana, Chicago. Her face was battered and bruised. The body was transported to a hospital and then to the Cook County Morgue. He saw the unclothed body at the morgue either that day or the next and observed bruises on both face and body.

*Stipulation*

It was stipulated that the death of the deceased resulted from traumatic laceration of the liver, and that contributing factors were bruises to the face, neck, chest, abdomen and upper extremities, with fractures of the fourth, fifth and sixth ribs on the right side.

*John Thompson,* in his own behalf:

On May 19, 1971, he went to his mother-in-law's house at 12:00 noon, had a cup of coffee, joked with Mrs. Currie's husband, and left around 3:00 P.M. His wife was not there, and his mother-in-law had not heard from her. As of that date, his wife had left him and had been gone for three days. His mother-in-law called him later that day and told him that her daughter was at her house, and then her daughter got on the phone and asked him to come and pick her up. He drove back to his mother-in-law's house at about midnight. He knocked on the door, but did not go into the house. He never threatened to kill his wife in his mother-in-law's presence on that day. He waited in the car until his wife came out. She was wearing a white slack suit and black shoes. She got into the car, and on their way home, they stopped at a liquor store around 39th and King Drive to buy a half pint of scotch. He was in the store about 20 minutes, and when he returned to the car, his wife was gone. He walked back to the store and looked around, and then drove around the block, but could not find her, finally returning home without her. When his mother-in-law called a short time later to ask how her daughter was, he answered that he did not know because she had left the car and he didn't know where she was.

They had been married about five years and had no children. She had left him on many other occasions, and it was not unusual for her to leave for a day or two.

May 19 and 20, 1971, were his days off, and on May 21, 1971, he went to work at U.S. Steel Co., where he was employed as a caster. He was arrested there. He did not give permission to any officer to search his car. He was taken to headquarters, and when he was questioned there, he told the same account that he had just related in court. He never told the police that he had had an argument with his wife or that he had struck her with his fists until she died.

OPINION

■■ Although defendant was indicted for the murder of his wife, the

trial judge, sitting without a jury, found him guilty of voluntary manslaughter. In a murder trial, a defendant may properly be found guilty of the lesser offense of voluntary manslaughter, but only if the evidence adduced at trial establishes the necessary elements of that offense. *People v. Crawford*, 387 Ill. 616, 56 N.E.2d 805; *People v. Adams*, 113 Ill.App.2d 205, 252 N.E.2d 35.

While we agree with the decision reached in the recent case of *People v. Young*, 11 Ill.App.3d 609, (N.E.2d), the court's opinion seems to indicate that when a defendant is found guilty of manslaughter on a charge of murder, something in the nature of an estoppel arises which prevents him from complaining on appeal that the evidence did not support the lesser charge. We consider such a principle clearly inferable from the court's citation of six cases followed by this statement:

> "From these cases a number of principles appear:
>
> 1. The defendant may not complain of a finding of guilty of manslaughter where the evidence shows that he could have been found guilty of murder.
>
> 2. * * *."

The cases referred to are: *People v. Green*, 23 Ill.2d 584, 179 N.E.2d 644; *People v. Wiggins*, 12 Ill.2d 418, 147 N.E.2d 80; *People v. Franklin*, 390 Ill. 108, 60 N.E.2d 870; *People v. Crawford*, 387 Ill. 616, 56 N.E.2d 805; *People v. Sain*, 384 Ill. 394, 51 N.E.2d 557; *People v. Binion*, 132 Ill. App.2d 257, 267 N.E.2d 715.

In our opinion, these cases do not support so broad a conclusion. Rather do we believe that they require conviction of the lesser crime to be supported in all its elements by the evidence in the case. See, for example, *People v. Wiggins*, 12 Ill.2d 418, 426, 147 N.E.2d 80, 85, where the court said:

> "In the instant case defendant repeatedly stated that she did not intend to kill or harm deceased; consequently, the finding of the trial court that the requisite element of malice was lacking, and that the killing, without intent to do so, in the course of an unlawful act, constituted involuntary manslaughter *was substantiated by the record and was in accordance with the definition of the crime in the Criminal Code.* Ill.Rev. Stat. 1957, chap. 38, par. 363." (Emphasis added.)

Also see *People v. Binion*, 132 Ill.App.2d 257, 259-260, 267 N.E.2d 715, 716:

> "The parties appear to agree that under an indictment for murder the court may find the defendant guilty of the lesser included offense of voluntary manslaughter and that an accused has no

right to limit the determination to guilt or innocence on a murder charge *where the evidence would support a conviction for the lesser charge. (People v. Taylor,* 36 Ill.2d 483, 489; *People v. Green,* 23 Ill.2d 584, 590.) The fact that the evidence would have justified a finding of guilty on the charge of murder is not one of which the defendant can complain." (Emphasis added.)

■■ Defendant here contends, and we agree, that the evidence was insufficient for the purpose of proving him guilty of voluntary manslaughter. Section 9—2 of the Illinois Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 9—2), specifically sets forth the elements of the crime. The section reads in pertinent part:

"Sec. 9—2 (a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a *sudden and intense passion resulting from serious provocation* by:

(1) The individual killed, * * *

*Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.*" (Emphasis added.)

■■ There is nothing in the record to indicate that defendant was acting under a "sudden and intense passion resulting from serious provocation." Taking the testimony of Mrs. Currie as true, defendant, in speaking to her at her home, threatened to kill his wife. Despite this, it was still Mrs. Currie's testimony that in conversation between defendant and his wife, they had not engaged in an argument, that defendant had not forced his wife to leave with him, and that after they left together, she had seen no reason to call the police. From this testimony, it cannot be inferred that the deceased provoked defendant to take violent physical action against her, or that any action defendant might later have taken was the result of an intense passion generated thereby. Considering Officer Banahan's testimony, defendant admitted that he had had an argument with his wife, and that when they began to fight, he had beaten her with his fists. However, according to this oral statement, there was no indication that defendant had been seriously provoked, and in defendant's testimony he denied the entire episode. The only evidence as to provocation which was brought out by the State was essentially that defendant had had an argument with his wife, whether it was the argument inferred from the testimony of Mrs. Currie as to what had taken place in her living room, or the argument defendant was said to have admitted to Officer Banahan. In either case, there was no evidence of any related violence of consequence and none whatsoever admitted by defendant at the trial. It is a well-established proposition of law that mere words are

insufficient provocation within the meaning of that term as an element of voluntary manslaughter. *People v. Lowe*, 122 Ill.App.2d 197, 212-213, 258 N.E.2d 370, 378.

██ We conclude that while the evidence might have sustained a conviction for murder, a voluntary manslaughter conviction cannot stand. Since defendant's conviction of the lesser crime amounted to an acquittal of the greater crime of murder, and we have found that the evidence failed to prove voluntary manslaughter beyond a reasonable doubt, the judgment appealed from must be reversed.

The judgment of the circuit court is reversed.

Reversed.

DRUCKER, P. J., and LORENZ, J., concur.