THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLIFFORD HUDSON, Defendant-Appellant.

First District (4th Division)    No. 77-1086

Opinion filed April 12, 1979.

ROMITI, J., dissenting.

James J. Doherty, Public Defender, of Chicago (Timothy P. O'Neill, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Rimas F. Cernius, and James M. Thunder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant, Clifford Hudson, on November 5, 1976, was found guilty of murder (Ill. Rev. Stat. 1975, ch. 38, par. 9—1(a)(2)). Defendant was sentenced to a penitentiary term of 14 to 20 years. On appeal, defendant contends that the State failed to prove beyond a reasonable doubt that he was guilty of murder and that he was not acting in self-defense. Even if his actions were not justified, defendant contends he is guilty of no more than voluntary manslaughter.

We reduce the degree of the offense for which defendant was convicted from murder to voluntary manslaughter and remand the cause with directions.

On March 1, 1976, Clarence Williams died of a stab wound inflicted by defendant during an altercation in the deceased's apartment at 1113 South Albany, Chicago. Lealer May Williams, the deceased's common-law wife, and her brother, Willie Sanders, were also in the apartment when the stabbing took place.

According to Lealer May Williams, defendant and Willie Sanders arrived together at the Williams' apartment at about 9:15 p.m. that night. When they arrived Clarence Williams was talking on the telephone. Ms. Williams testified that she heard defendant threaten Williams and when Williams hung up the telephone several minutes later, defendant proceeded to strike him twice. Williams began to fight back and the two fell to the dining room floor where they exchanged blows for five to 10 minutes. In the course of the fight, Williams, the larger man, stood up and kicked defendant as he was lying on the floor. At this point, Sanders pulled Williams away. The fight continued briefly and then defendant, Williams and Sanders went into the kitchen. She heard Sanders say "Let's go." Ms. Williams remained in the dining room.

After about five minutes, Ms. Williams heard something metallic hit the kitchen floor. Defendant ran out of the kitchen through the dining room to the front door. Williams followed, but then clutched his side and fell to his knees in the hallway. It became obvious that Williams was injured. Defendant and Sanders lifted Williams to the couch. Defendant asked Ms. Williams to bring some towels, which defendant used to wipe the injured man's face. Ms. Williams, defendant and Sanders waited with the decedent in the apartment until the police arrived.

Willie Sanders, who resided with defendant and defendant's mother at the time of the incident, was the prosecution's second witness. He testified that on the night in question he and defendant had some drinks and then went to visit his sister, Lealer May Williams. When they arrived at the Williams' apartment, he heard defendant say to Williams, who was

on the telephone, "When you're finished with that phone, I'm going to kick your mother-fucking ass."

Sanders corroborated Ms. Williams' testimony that after Williams hung up the telephone, defendant hit Williams and a fight ensued. When Williams began to kick the defendant, Sanders restrained him and said to defendant, "Let's go." Defendant agreed but then tackled Williams again and they fought briefly. Again Sanders asked defendant to leave and the three men went into the kitchen towards the back door. Near the back door, Williams leaned against the freezer and began to discuss a possible tuckpointing job with Sanders. As Sanders opened the back door to leave, he heard a noise and turned to see Williams holding his abdomen. Sanders did not see defendant stab Williams. Defendant ran from the kitchen to the front door; Williams followed slowly. Next, Sanders heard Ms. Williams calling him for help, saying Williams had been hurt.

Police Officer Padar testified that he searched the Williams' apartment that night, having obtained permission from Lealer May Williams. A knife handle was found in the front hallway and a fully loaded .32-caliber revolver was found in the front bedroom between the mattress and the box spring. Lealer May Williams and Sanders both denied ever seeing the gun or witnessing Williams threaten defendant with a weapon. Ms. Williams testified that the room in which the gun was found was occupied by her son who had not been home for four months before the incident. Sanders denied discussing the gun with Ms. Williams and both denied discussing their testimony with each other.

Officer Padar, when later called by the defense, further testified that on the night of the incident, Ms. Williams and Sanders stated to him that the fight had started in the living room-dining room area and had then moved into the kitchen. He also stated that he had noted a laceration above defendant's eye.

Prior to trial, the trial judge granted the State's motion to prohibit the defense from introducing into evidence defendant's statements to the police following the incident in which he admitted having killed Williams in self-defense.

At trial, defendant gave the following account of the events. After having something to drink, he and Sanders went to the Williams' apartment. Williams was not talking on the telephone when they arrived. Defendant testified that as he sat in the dining room, Williams began staring at him and then jumped up and came towards him. Defendant pushed him away, but Williams came at him again and a fight began. During the fight Williams kicked him and defendant suffered a cut over his eye. Someone pulled Williams away from him, and, at that point, defendant announced he was leaving by the back door. Williams yelled

and came at him again and the fighting continued in the kitchen. Defendant testified that Williams put his hand in his pocket and said "I'll blow your mother-fucking brains out." Defendant stated that he could see Williams pulling a pistol from his right pocket, and became frightened because he had heard that Williams had a reputation for violence. Defendant saw a knife lying near the kitchen sink. He picked it up and ran the knife into Williams. Defendant ran to the front door but Williams followed holding the gun. In the hallway, Ms. Williams grabbed Williams' arm and he fell to the floor.

Willie Pearson, Lealer May Williams' son-in-law, testified that in his home on February 29, 1976, he had seen Ms. Williams with a brown nickel-plated gun. She told him that she carried it for protection. Pearson also testified that he later witnessed a conversation at the Williams' apartment during which Sanders told Ms. Williams that he would not testify because Williams had a gun. Pearson said that Ms. Williams told Sanders that he would either testify and say that Williams did not have a gun or find himself without a place to stay. Pearson admitted that he was, at the time of trial, an inmate at Cook County Jail where he had seen defendant, but he denied discussing the case with defendant.

Opinion

I

■■ Defendant contends that the State failed to prove beyond a reasonable doubt that his actions were not in self-defense. Defendant offered "some evidence" tending to prove that he acted in self-defense; therefore, the State had the burden of proving defendant's guilt beyond a reasonable doubt as to that issue as well as all other elements of the offense charged. *People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681, *cert. denied* (1974), 419 U.S. 1026, 42 L.Ed. 2d 302, 95 S.Ct. 506; *People v. Connelly* (1978), 57 Ill. App. 3d 955, 373 N.E.2d 823.

The statutory requirements found in section 7—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 7—1) for determining whether the use of force is justified as self-defense have been enumerated as follows:

> "(1) that force is threatened against a person; (2) that the person threatened is not the aggressor; (3) that the danger of harm is imminent; (4) that the force threatened is unlawful; (5) that the person threatened must actually believe: (a) that a danger exists, (b) that the use of force is necessary to avert the danger, (c) that the kind and amount of force which he uses is necessary; and (6) that the above beliefs are reasonable. There is a further principle involved, when, as in the instant case, the defendant uses deadly force. This principle limits the use of deadly force to those

situations in which (a) the threatened force will cause death or great bodily harm or (b) the force threatened is a forcible felony." (*People v. Williams* (1965), 56 Ill. App. 2d 159, 165, 205 N.E.2d 749, 752; see also *People v. Pitchford* (1976), 39 Ill. App. 3d 182, 350 N.E.2d 170.)

In addition, if the defendant is the aggressor, the use of deadly force is justified only if:

"(1) Such force is so great that he reasonably believes that he is in imminent danger of death or great bodily harm, and that he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or great bodily harm to the assailant; or

(2) In good faith, he withdraws from physical contact with the assailant and indicates clearly to the assailant that he desires to withdraw and terminate the use of force, but the assailant continues or resumes the use of force." Ill. Rev. Stat. 1975, ch. 38, par. 7—4(c)(1) and (2).

The contention that defendant was justifiably acting in self-defense when he stabbed Williams rests on one essential question of fact—whether Williams had a gun. Defendant testified that Williams was the aggressor and that he threatened defendant and reached for a gun in his pocket before defendant grabbed the knife and stabbed him. Defendant also testified that after Williams had been stabbed he came towards defendant with the gun so that all persons present had seen the weapon. In contrast to defendant's testimony, the State's witnesses testified that defendant precipitated the fight and that they never saw a gun in Williams' possession.

Defendant argues that the testimony of the State's witnesses is not worthy of belief because it was impeached both by the fact that a gun was found in the deceased's apartment immediately after the incident and by the testimony of Willie Pearson. Officer Padar testified that a gun was found in the apartment on the night of the incident concealed between a mattress and box spring. Willie Pearson testified that the day before the incident Ms. Williams was carrying a .32-caliber revolver. He also stated that several weeks after the incident, Sanders had expressed an unwillingness to testify against defendant because the deceased had a gun.

This conflicting testimony was presented to the trial judge as a trier of fact. Where, as here, there is no question of defendant's connection with the event, "[t]he issue is the credibility of the defendant in the light of the evidence of physical facts and the evidence contradicting his testimony." (*People v. Russell* (1975), 29 Ill. App. 3d 59, 63, 329 N.E.2d 450, 453.) The

court weighs the testimony and considers the biases of the witnesses. The trier of fact is entitled to disbelieve defendant's testimony and need not disregard the inferences which flow from the other evidence nor search for " 'a series of potential explanations compatible with innocence, and elevate them to the status of a reasonable doubt.' " (*People v. Benedik* (1974), 56 Ill. 2d 306, 309, 307 N.E.2d 382, 384; *People v. Pitchford* (1976), 39 Ill. App. 3d 182, 189, 350 N.E.2d 170, 176.) It is apparent that the trial judge, in this instance, rejected defendant's assertion that Williams threatened defendant with a gun, and we will not disturb that determination.

## II

■ Although the trier of fact could reasonably have rejected defendant's version of the facts, even if the testimony of the State's witnesses is accepted as true, we find that the evidence is insufficient to prove defendant guilty of murder beyond a reasonable doubt. However, we do find evidence sufficient to convict defendant of voluntary manslaughter.

■ A person who kills an individual without lawful justification commits voluntary manslaughter if, at the time of the killing, he is acting under a sudden and intense passion resulting from serious provocation. (Ill. Rev. Stat. 1975, ch. 38, par. 9—2(a) (1).) Mutual quarrel or combat is sufficient to support a finding of serious provocation. (*People v. Goolsby* (1977), 45 Ill. App. 3d 441, 359 N.E.2d 871; *People v. Johnson* (1972), 4 Ill. App. 3d 249, 280 N.E.2d 764.) The term "mutual combat" has been defined as one into which both parties enter willingly, or in which two persons, upon a sudden quarrel and in hot blood, mutually fight on equal terms. (*People v. Matthews* (1974), 21 Ill. App. 3d 249, 314 N.E.2d 15.) "The state of mind involved in voluntary manslaughter has been variously described as an 'act of passion' and 'sudden act of revenge,' differentiating its culpability from that state of mind involved in murder. '[T]he law pays that regard to human frailty, as not to put a hasty and deliberate act upon the same footing with regard to guilt.' 4 Blackstone (7th ed.) 191-192." *People v. Johnson* (1972), 4 Ill. App. 3d 249, 252, 280 N.E.2d 764, 766.

In this case it is undisputed that defendant and the deceased engaged in a fist fight for five to 10 minutes prior to the stabbing. Even if it is assumed, as contended by the State's witnesses, that defendant was the initial aggressor, the deceased appears to have had the advantage during the fight. He repeatedly kicked defendant, who was lying on the floor, and had to be pulled away by one of the onlookers. Defendant had been drinking and sustained a cut over his eye during the fight. The additional fact that the knife used by defendant was grabbed from the kitchen sink illustrates the hasty and undeliberate nature of his act. In fact, the

defendant voluntarily remained in the apartment until the police arrived. We can find no indication of malice or revenge under these circumstances.

We find support for our position in *People v. Gajda* (1967), 87 Ill. App. 2d 316, 232 N.E.2d 49. There, evidence was presented of a quarrel of some duration. The defendant testified that the deceased had physically attacked him; however, the State's evidence contradicted the defendant's testimony. Nonetheless, the court found the provocation sufficient to support a conviction for voluntary manslaughter. Similarly, in *People v. Johnson* (1972), 4 Ill. App. 3d 249, 280 N.E.2d 764, the defendant stabbed the deceased after joining in a fight to aid a friend. The victim in that case was unarmed, yet the court found serious provocation sufficient to reduce the defendant's murder conviction to voluntary manslaughter.

■ The State argues that defendant could not have been seriously provoked at the time he stabbed the deceased because a period of time sufficient to cool defendant's passions elapsed between the fight and the stabbing. The State relies on Ms. Williams' statement that the men were in the kitchen about five minutes before Williams emerged injured and Willie Sanders' testimony that he discussed a tuckpointing job with Williams at the back door. What constitutes a sufficient cooling-off period depends upon the magnitude of the provoking act and the degree to which passions have been aroused in the defendant. "[N]o yardstick of time can be used by the court to measure a reasonable period of passion but it must vary as do the facts in every case." (*People v. Harris* (1956), 8 Ill. 2d 431, 435, 134 N.E.2d 315, 317.) Here the fight lasted from five to 10 minutes and resumed even after the participants had been separated. The State's evidence does not focus on the actions of the defendant during the interim, yet, it is the defendant's state of mind at the time of the incident that is critical. (*People v. Johnson* (1972), 4 Ill. App. 3d 249, 280 N.E.2d 764.) The testimony of the State's witnesses is not adequate to indicate that a sufficient period of time to cool defendant's passions had elapsed. *People v. Stowers* (1971), 133 Ill. App. 2d 627, 273 N.E.2d 493.

We conclude that the evidence as a whole is insufficient to prove defendant guilty of murder; however, it is sufficient to prove defendant guilty of voluntary manslaughter beyond a reasonable doubt. Under the power granted by Supreme Court Rule 615(b)(3), we reduce the degree of the offense for which defendant was convicted from murder to voluntary manslaughter. Ill. Rev. Stat. 1977, ch. 110A, par. 615(b)(3).

As modified, the conviction is affirmed and the cause remanded to the circuit court of Cook County with directions that a sentence be imposed for voluntary manslaughter appropriate to the facts and

circumstances of this cause and to such matters in aggravation and mitigation as may be made available to the trial court. *People v. Goolsby* (1977), 45 Ill. App. 3d 441, 359 N.E.2d 871.

Affirmed as modified and remanded with directions.

JOHNSON, J., concurs.

Mr. JUSTICE ROMITI, dissenting:

Because I believe the evidence at trial was sufficient to establish the offense of murder but not voluntary manslaughter, I dissent.

Section 9—1(a) (2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 9—1(a) (2)) provides that one who kills an individual without lawful justification commits murder if in performing the acts which cause the death he knows that such acts create a strong probability of death or great bodily harm to that individual. Defendant admitted at trial that he stabbed Clarence Williams, but claimed to have done so in self-defense. The trial court found that defendant "performed the act of stabbing the victim knowing that such an act creates a strong probability of death or great bodily harm to the victim" and convicted him of murder, thus clearly rejecting defendant's version of the occurrence. Now, for the first time on appeal, defendant asserts that at most the evidence supports a finding that he was acting under a sudden and intense passion at the time he stabbed the victim. It is clear the trial judge, as the finder of fact, believed the testimony of the State's witnesses and that testimony does not support defendant's claim. When the stabbing occurred the physical struggle between defendant and Williams had been over for fully five minutes. Defendant had indicated his intention to leave; indeed, his testimony was that he told his companion, Sanders, that they should leave. They then entered the kitchen, which was the location of a rear exit. The testimony of the State's witnesses indicated no reoccurrence of the fight there. The victim even conversed with Sanders about a job possibility. Even in defendant's testimony there is no indication that he was acting under a sudden and intense passion when he then stabbed Williams. He claimed to be acting in self-defense, out of fear for his life, not out of continuing anger at Williams.

As this was a bench trial it became the province of the trial judge to determine if defendant acted in self-defense or whether his actions constituted murder, manslaughter or justifiable homicide. (*People v. Crawford* (1944), 387 Ill. 616, 56 N.E.2d 805; *People v. Dillon* (1975), 28 Ill. App. 3d 11, 327 N.E.2d 225.) The trial court rejected defendant's self-defense claim and the majority accept that rejection, but they do not accept the court's implicit determination that the remaining evidence

only supported a murder conviction. Under the circumstances outlined I cannot agree with this court's rejection of that determination.

Defendant's conviction for murder should be affirmed.